# ARVID NORDBY v. O. J. SORLIE.

(L.R.A.1917B, 753, 160 N. W. 70.)

**Motor cycle— automobile — collision of — damages — action to recover —, negligence of defendant.**

    1. Plaintiff, riding a motor cycle, met defendant driving an automobile, and collided with the rear wheel of the auto just as it was turning out of plaintiff's half of the roadway. Plaintiff recovered a verdict of $2,500 for alleged negligence of defendant, who appeals.

    *Held*, there is no proof that defendant was negligent.

**Negligence — defendant — contributory negligence — plaintiff — recovery — cannot be had.**

    2. Conceding that defendant was negligent, it is conclusively established by plaintiff's own testimony and by uncontroverted evidence that plaintiff was guilty of contributory negligence barring his recovery.

**Finding of jury — plaintiff's negligence — admitted facts — contrary to — verdict not in accord with facts — dismissal of case — should have been ordered.**

    3. The finding by the jury that plaintiff was not guilty of contributory negligence is contrary to all the admitted facts and to plaintiff's own proof, and cannot be upheld. A directed verdict of dismissal should have been ordered.

Opinion filed November 10, 1916. Rehearing denied December 2, 1916.

Appeal from the District Court of Traill County, *Cooley,* Special Judge.

Reversed and action ordered dismissed.

  *Henry Leum* and *Chas. A. Lyche,* for respondent.

Generally speaking, a person knows and can testify to the fact as to whether or not he was intoxicated at a past given time and place, and to ask him the question is not calling for his mere conclusion. People v. Eastwood, 14 N. Y. 562; Com. v. Eyler, 217 Pa. 512, 66 Atl. 746, 10 Ann. Cas. 786, and extensive note in 11 L.R.A.(N.S.) 639.

---

    Note.—For rules of the road governing vehicles proceeding in opposite direction, see note in 41 L.R.A.(N.S.) 322, and as to vehicles proceeding in the same direction, see note in 41 L.R.A.(N.S.) 337.

    For speed of automobiles as negligence, see notes in 38 L.R.A.(N.S.) 488; 42 L.R.A.(N.S.) 1180, and 51 L.R.A.(N.S.) 993.

The fact that the same or another person to whom defendant is responsible for a similar negligent act showed similar negligence cannot be shown. Malton v. Nesbit, 1 Car. & P. 70.

Prior and other negligent acts of the plaintiff cannot be shown. Edwards v. Ottawa River Nav. Co. 39 U. C. Q. B. 264; Southern Bell Teleph. & Teleg. Co. v. Watts, 13 C. C. A. 579, 25 U. S. App. 214, 66 Fed. 461; Delaware, L. & W. R. Co. v. Converse, 139 U. S. 469, 35 L. ed. 213, 11 Sup. Ct. Rep. 569; Little Rock & M. R. Co. Harrell, 58 Ark. 468, 25 S. W. 117, 11 Am. Neg. Cas. 144; T. & H. Pueblo Bldg. Co. v. Klein, 5 Colo. App. 348, 38 Pac. 608; Lake Erie & W. R. Co. v. Morain, 140 Ill. 117, 29 N. E. 869; Chicago, B. & Q. R. Co. v. Lee, 60 Ill. 501; Dalton v. Chicago, R. I. & P. R. Co. 114 Iowa, 257, 86 N. W. 272; Chicago, R. I. & P. R. Co. v. Durand, 65 Kan. 380, 69 Pac. 356, 12 Am. Neg. Rep. 29; Hutcherson v. Louisville & N. R. Co. 21 Ky. L. Rep. 733, 52 S. W. 955; Parker v. Portland Pub. Co. 69 Me. 173, 31 Am. Rep. 262; Aiken v. Holyoke Street R. Co. 184 Mass. 269, 68 N. E. 238; Whitney v. Gross, 140 Mass. 232, 5 N. E. 619; Maguire v. Middlesex R. Co. 115 Mass. 239; Robinson v. Fitchburg & W. R. Co. 7 Gray, 92; Detroit & M. R. Co. v. Van Steinburg, 17 Mich. 99; Southern R. Co. v. Kendrick, 40 Miss. 382, 90 Am. Dec. 332; Newstrom v. St. Paul & D. R. Co. 61 Minn. 78, 63 N. W. 253, 12 Am. Neg. Cas. 136; Kennon v. Gilmer, 5 Mont. 257, 51 Am. Rep. 45, 5 Pac. 847; International & G. N. R. Co. v. Ives, 31 Tex. Civ. App. 272, 71 S. W. 772; Gulf, C. & S. F. R. Co. v. Rowland, 82 Tex. 166, 18 S. W. 96; Contra, Galveston, H. & S. A. R. Co. v. Kutac, 76 Tex. 473, 13 S. W. 327; Hays y. Gainesville Street R. Co. 70 Tex. 602, 8 Am. St. Rep. 624, 8 S. W. 491; Christensen v. Union Trunk Line, 6 Wash. 75, 32 Pac. 1018.

*Theo. Kaldor* and *John Carmody,* for appellant.

A public highway is open in all its length and breadth to the reasonable, common, and equal use of the people on foot or in vehicles. In using the highways all people are bound to the exercise of reasonable care to prevent accidents and injury. The owner of an automobile has the same rights as the owners of other vehicles. Christy v. Elliott, 216 Ill. 31, 1 L.R.A.(N.S.) 215, 108 Am. St. Rep. 196, 74 N. E. 1035, 3 Ann. Cas. 487; Hennessey v. Taylor, 189 Mass. 583, 3 L.R.A.(N.S.) 345, 76 N. E. 224, 4 Ann. Cas. 396, 19 Am. Neg. Rep. 285; Indiana

Springs Co. v. Brown, 165 Ind. 465, 1 L.R.A.(N.S.) 238, 74 N. E. 615, 6 Ann. Cas. 656, 18 Am. Neg. Rep. 392; Fox v. Barekman, 178 Ind. 572, 99 N. E. 989; Messer v. Bruening, 48 L.R.A.(N.S.) 945, and note, 25 N. D. 599, 142 N. W. 158; Minor v. Stevens, 42 L.R.A. (N.S.) 1178, note.

Plaintiff was guilty of contributory negligence, and his own negligence was the direct cause of his injury. He exercised no care, according to the admitted facts, and was violating the state law as to speed. Thies v. Thomas, 77 N. Y. Supp. 276; Nadeau v. Sawyer, 73 N. H. 70, 59 Atl. 369; McIntyre v. Orner, 166 Ind. 57, 4 L.R.A.(N.S.) 1130, 117 Am. St. Rep. 359, 76 N. E. 750, 8 Ann. Cas. 1087; Wright v. Crane, 142 Mich. 508, 106 N. W. 71, 19 Am. Neg. Rep. 336; Newcomb v. Boston Protective Dept. 146 Mass. 597, 4 Am. St. Rep. 354, 16 N. E. 555; Babbitt, Motor Vehicles, ¶ 250; Wolfe v. Ives, 83 Conn. 174, 76 Atl. 526, 19 Ann. Cas. 752; Spofford v. Harlow, 3 Allen, 176; Butterfield v. Forrester, 11 East, 60, 103 Eng. Reprint, 926, 10 Revised Rep. 433, 19 Eng. Rul. Cas. 189; Huddy, Automobiles, 3d ed. p. 102; Brooks v. Hart, 14 N. H. 307; Clay v. Wood, 5 Esp. 44, 8 Revised Rep. 827; Thomp. Neg. 2d ed. § 1287; Decou v. Dexheimer, — N. J. L. —, 73 Atl. 49.

A traveler on the public highway is not with heedlessness to rush into danger because his fellow traveler has wrongfully given him the opportunity to receive an injury. He must use ordinary care to avoid injury that otherwise might result from the faults of others. Parker v. Adams, 12 Met. 415, 46 Am. Dec. 694; Loftus v. North Adams, 160 Mass. 161, 35 N. E. 674; Cassedy v. Stockbridge, 21 Vt. 391.

Proof of unskilful and reckless driving will preclude plaintiff from recovering, if his conduct contributed to the injury. Peoria Bridge Asso. v. Loomis, 20 Ill. 236, 71 Am. Dec. 263; Huddy, Automobiles, 3d ed. § 79, pp. 101, 136, 156 and 157; Vesper v. Lavender, — Tex. Civ. App. —, 149 S. W. 377.

Where an automobile is handled with care, but, on account of the condition of the streets, skids and injures a person, the owner or driver is not liable. Chase v. Tingdale Bros. 127 Minn. 401, 149 N. W. 654; Oxford Hotel Co. v. Lind, 28 L.R.A.(N.S.) 495, note.

A verdict or decision that, under the evidence, is contrary to the law governing the case, must be set aside; or, if contrary to the weight of

the evidence, must be set aside. Benedict v. Lawson, 5 Ark. 514; Crocker v. Garland, 7 Cal. Unrep. 275, 87 Pac. 209.

The evidence here is not even sufficiently conflicting to allow the verdict to stand. It is not a question of the weight of the evidence on the part of defendant, but rather a matter of no evidence to sustain the action, or support the verdict. Malmstad v. McHenry Teleph. Co. 29 N. D. 21, 149 N. W. 690; Behling v. Wisconsin Bridge & Iron Co. 158 Wis. 584, 149 N. W. 486; Fuller v. Northern P. Elevator Co. 2 N. D. 220, 50 N. W. 359.

A new trial will always be granted where the verdict is plainly and manifestly against the weight of the evidence. A statute which authorizes a new trial for insufficient evidence confers power to grant a new trial where the verdict is against the weight of the evidence. McDonald v. Walter, 40 N. Y. 551; Inland & S. Coasting Co. v. Hall, 124 U. S. 121, 31 L. ed. 369, 8 Sup. Ct. Rep. 397; Metropolitan R. Co. v. Moore, 121 U. S. 558, 30 L. ed. 1022, 7 Sup. Ct. Rep. 1334; Fuller v. Northern P. Elevator Co. 2 N. D. 220, 50 N. W. 359; Reynolds v. Lambert, 69 Ill. 495; Fox River Mfg. Co. v. Reeves, 68 Ill. 403; Blake v. McMullen, 91 Ill. 32; Reid v. Colby, 26 Neb. 469, 42 N. W. 485; Comp. Laws 1913, § 7660.

Goss, J. Assignments upon refusal to direct a verdict challenge the sufficiency of the evidence to sustain a $2,500 verdict against defendant as damages from a motor cycle and automobile collision.

Defendant resides at Buxton. On Sunday, July 12, 1914, with his family he went by automobile 18 miles to Mayville, where a Chautauqua was being held. He left Mayville for home about 6 P. M. Two other autos, driven by Knudson and by Gunderson, left just ahead of Sorlie, running in that order. They met plaintiff coming on his motorcycle, 6 miles out. They were going east and plaintiff west. Less than a mile intervened between the lead machine of Knudson's and Sorlie's automobile. Plaintiff met and passed the autos of Knudson and Gunderson, overtook and passed a team, and then met and collided with Sorlie's machine. Plaintiff broke his leg, necessitating its amputation.

At the place of the accident the main traveled roadway ran to the extreme left and north side of a wide crowned but somewhat rough highway. From ditch to ditch the driveway was wide enough for three

rigs abreast, but the traveled roadway ran well to the north side, with ruts worn in by travel to a depth of $1\frac{1}{2}$ inches, as estimated by plaintiff's witnesses, to $3\frac{1}{2}$ inches according to defendant's measurements. Seeing plaintiff coming, defendant endeavored to turn out of the ruts, but succeeded in getting only his front wheels out, while the rear ones remained in them, sliding along, but not mounting the rut so as to carry the rear of the machine over to the right, clearing plaintiff's half of the roadway. Seeing Sorlie turning out, plaintiff assumed that the auto would be out of the north track of the roadway, until too late to avoid striking the rear wheel.

Plaintiff assumes (1) that Sorlie was negligent in being upon the left side of the highway (although within the traveled roadway) instead of upon the untraveled right side of the highway; and (2) in not having his machine under control because of alleged high speed at which plaintiff claims Sorlie was traveling. Sorlie asserts that he had a right to be where he was, exactly in the route of ordinary travel, and hence was not negligent; and also that he was not driving at more than 15 miles an hour at the time, and was not negligent in any way, but was doing his utmost to get out of plaintiff's way when plaintiff dashed into his rig. And Sorlie claims that the uncontradicted testimony establishes conclusively that plaintiff caused his injury by his own contributory negligence in failing to slacken his speed or control his motor cycle while attempting to pass defendant at a high and excessive rate of speed.

The first contention that defendant was upon the wrong side of the highway, and that negligence based upon that fact alone can be assumed, is untenable. While the highway to the south might have been traveled had it been necessary to do so, it was not the generally traveled roadway, otherwise the ruts would not have been worn. The remainder of the highway was practically untraveled. As defendant was but traveling where all others drove, he was only doing what all others had done, and therefore could not have been negligent in merely following that roadway instead of a rougher one elsewhere. The very definition of negligence imports a departure from the usual conduct of the ordinarily prudent individual. And as Sorlie, in doing what he was and what others generally had done, was not departing from that standard, but instead only following it, the assumption of negligence assumed by plaintiff at the outset is erroneous and unsound.

Illustrative of this, the brief reads: "The defendant kept to the *left* in violation of the law of the road, and was following the spur next to the same ditch at the time of the collision. The plaintiff was on the right side of the highway, but the defendant was on the *wrong* side." He has the words "left" and "wrong" italicized to emphasize their importance. For reasons stated, defendant was not on the "wrong" side of the highway, but was where he had a right to be, without any imputation of negligence being drawn from the fact that he was in the traveled roadway upon that portion of the highway. The jury should have been instructed as a matter of law that defendant was not negligent in being in the traveled roadway upon the highway.

And now to examine the other alleged negligence of defendant, and the contributory negligence charged against plaintiff. The two may best be considered jointly under a recitation of all the facts in evidence bearing on them.

Plaintiff had left Hillsboro at 6 or a quarter to 6 at approximately the same time that Sorlie and accompanying autos had left Mayville. During the time intervening before the collision plaintiff had run 16 miles. Sorlie had gone between 5 and 6 miles during the same period. Comparing distances and elapsed time, plaintiff must have traveled nearly three times as fast for that period as Sorlie had traveled. Plaintiff had gone north from Hillsboro through Taft and Cummings, going a mile out of his way and back between the latter place and the highway bearing straight into Mayville, a mile and a half ahead of the place of collision. His undisputed record of achievement of speed and its consequences from the time he left Hillsboro is in evidence. He met or passed half a dozen rigs and automobiles on the trip before the collision, and in every instance the drivers met or overtaken took to the ditch because of the excessive speed at which plaintiff came down upon and passed them. This is undisputed. The nearest plaintiff comes to contradicting it is that he did not notice or observe who he met or where they went.

Plaintiff testifies that he had a drink of whisky at 10 o'clock that forenoon; and that he had been to a beer party a mile out of Hillsboro until just before supper. He admitted having drank at least four glasses of beer and might have had five, as a keg of beer was on tap all that afternoon.

The first party Norby met a mile and one-half or 2 miles north of Hillsboro on this eventful motor cycle ride was O. A. Hong, who was driving south in an auto. Here the first significant fact appears. Plaintiff approached and passed in the wrong track. Hong testifies: "I swung into the ditch on the east side to get out of his way. He was coming on the west side all along. It was around 6 o'clock or possibly a few minutes after 6. I am not sure what time, but it was a little late for supper." "He was going at a pretty fast speed, did not give me any road, held the track on the west side of the road; I saw it was pretty fast speed, so I. drove into the ditch to be sure I would clear him, and he went past me pretty fast." The uncontroverted proof shows that at this particular point he was not only speeding, but coming on in the wrong track, where he did not belong. Had he collided with Hong, the latter would have been exonerated by plaintiff's contributory negligence.

He next met Holtz and Odegard, the latter driving, and this second machine, quoting Odegard's testimony, "went into the ditch. I had to go as far as I could to the west side of the road to give him the east side; happened to notice him coming and that he was going rather fast." Holtz, riding with Odegard, says they remarked about plaintiff's speed, and that Odegard said: "Look at that fellow coming." This statement clearly admissible was erroneously stricken out as hearsay. It was a part of the facts of the trip, the res under investigation. That the statement was made strongly evidences the unusual.

Holtz continues:
"Well, he come up the road tearing, and Odegard turned out for him, of course, in the ditch as far as he could get, and he come along the road just in this shape.
Q. Swinging back and forth?
A. Yes, and he was coming pretty fast, going from one side of the road to the other, as he was coming towards us.

Then plaintiff approached Dr. Knudson's auto, Gunderson's auto, Tolsby's team, and Sorlie's auto, all four rigs strung out behind one another, and with Knudson's in the lead. The drivers and the occupants of all these rigs all agree that in every instance plaintiff did not

slacken speed, but came down upon them and whizzed by them until he collided with the last car. Knudson noticed plaintiff coming a half mile east before he turned the corner, and had a good opportunity to observe and judge of the speed at which plaintiff was approaching him. Knudson had driven cars for nine years, and, when asked the question, "From your experience in driving motor vehicles state to the jury your best judgment as to how fast this man on the motor cycle was coming at the time he passed you?" replied: "Well, it wasn't less than 40 miles an hour."

Q. Did he slow up when he approached and passed your car?

A. No, sir.

Q. He went by apparently at the same speed as when he was far ahead of you?

A. Yes.

Mrs. Knudson says, "He came pretty fast; we turned out for him; he came pretty fast, I could hardly see him," and just as he went by she exclaimed, "Oh my! he goes fast."

Oscar Hanson, riding in the front seat of Dr. Knudson's auto, testifies that his best judgment as to plaintiff's speed when he passed their car was "from 40 to 45 miles an hour."

Q. Did he seem to slow up as he approached your car?

A. No, he kept the same gait.

Q. State what you did as you approached him.

A. The doctor swung his car on the right into the ditch.

Q. Did you notice any exclamation by any one of those in the car as he passed you?

A. Yes, Mrs. Knudson hollered, "Oh my!"

Geo. Gunderson was driving some distance behind Knudson and ahead of Sorlie and also east of Tolsby's team. He had driven autos for two years. He says that "as he passed me I turned out in the ditch and he went past me pretty fast."

Q. At the time he approached you, as you met him, state whether or not he slowed up any.

A. He did not slow up.

Q. Was he using the same speed when he passed you, as far as you could tell, as he used when he was some distance ahead of you?

A. It looked that way.

Q. State whether or not you were off the traveled part of the road as you passed him.

A. Yes, I went off the road entirely.

Q. Did this man on the motor cycle make any attempt to turn out of the road or not?

A. No.

Gunder Ashiem, riding in Gunderson's car, gave similar testimony as to the way plaintiff approached and passed, and states as his best estimate of the speed at which plaintiff passed their rig immediately ahead of Sorlie's as "about 60 miles an hour," and that he didn't slow up. When asked, "What is the lowest you are positive he was running?" answers, "The lowest was about 40 miles, but I think he went 60, that is my honest opinion."

Carl Vigestrand, also riding in Gunderson's machine, likewise places plaintiff's speed at from "60 to 65 miles an hour," and adds, "When he passed our car, I looked back; I thought possibly he might take a tumble, he went so awful fast."

Plaintiff next overtook and passed Anton Tolsby going toward Mayville and only a short distance ahead of the point of collision. He also get off the road. He says: "I turned right out, right out through the ditch;" and that plaintiff in going by him "went pretty fast and I should judge 35 or 40 miles an hour, just right close to the horses. He kept the road and made no attempt to give me any room or turn out."

Sorlie was asked to describe the circumstances preliminary to the collision and replies:

Just as the motor cycle got over the rise and as soon as I distinguished what it was I started to turn out of the rut,—I was in the rut, and I got the front wheels out of the rut, but the hind wheels slid in the rut and I could not get them out, and before they got out he was there and struck the hind end of my machine.

Q. He passed the front of your machine safely?

A. Yes, the front was out, I got that out, and if the rest of the machine had gotten out when the front part came out, we would have been out to clear the man easily.

That a few hundred feet ahead was a depression, the lowest part of which was over 8 feet below the level of the road leading to it upon which was Sorlie. There is a plat in evidence, made the next day by Sorlie and another, assisted by one of the defendant's present attorneys, made as a precautionary matter. The main general facts therein stated are not denied by plaintiff. It shows that the roadway in which was the auto was 15 feet upon the highway from the bottom of the so-called north ditch, and that 32 inches from the outside rut over toward the ditch the crowning portion of the highway had lowered only 2 inches from what it was at the edge of the roadway; and 5⅔ feet or nearly twice as far toward the ditch it was but 3 inches lower than the traveled roadway. All witnesses except the plaintiff, including plaintiff's own witnesses, agree that there is no sudden drop or depression between the outer rut on the north side and the ditch on that side. And plaintiff testifies only from his impressions made hurriedly in his approach to Sorlie or while trying to pass. The measurements show the ditch to be only 17 inches deep, or a drop of only that much in the 15 feet from the north rut to the edge of the highway. The measurements actually taken tend to establish that plaintiff had ample room to pass without going into the ditch or even getting close to it, had he gotten out of the rut on that side.

Plaintiff testifies that his motor cycle that day "was running, but it wasn't running right; there was something wrong with the cylinders; it kind of bound in the cylinders." That he left Hillsboro "about 6 o'clock, or a little before;" he describes his route; was going "at the time of this accident I think about 15 or 18 miles an hour."

Q. And can you tell and give the jury an idea about how fast the auto driven by Sorlie was going?

A. No, I hardly can, it seemed it was a good speed, I can't say how fast it was [That he] was riding along on the right side till I met this fellow Sorlie.

Q. Tell the jury how it happened.

A. Well, just when I met him he was just turning the front wheels a little I guess.

Q. Do you remember the collision, do you remember coming together there?

A. Yes, just when we struck, just before the accident he turned his front wheels out of the rut or tracks where the front wheels were to the south of the road. [He had no speedometer on his motor cycle.]

Q. I want to ask you just how close to the traveled part of the road, the part of the road used for the wagons, was the north ditch?

A. There was just a few inches.

Q. About how many?

A. Probably a foot or so.

Q. Now I want to ask you if there was a traveled portion to the south, —was there a road traveled over south?

A. It looks to have been traveled there, but not so much as on the other side.

Q. Where was the road the smoothest on the north track or on the south track?

A. The north track.

Q. When you saw this man on the north side of the road, the same side that you were on, why didn't you stop your motor cycle?

A. *Of course I expected him to turn out the same as them others did.*

Q. Well, after you got nearer to him and saw he wasn't turning out, why didn't you stop your car (meaning motor cycle)?

A. *I never had time to stop,* and then, of course, *he was coming awful fast and struck me like a bullet.*

Q. Why didn't you get in the ditch?

A. The ditch was kind of deep on the north side. It was near square up and down, and *I probably would kill myself to go out there.*

Q. How far was your motor cycle from the ditch, as you were going along?

A. As close to the ditch as I possibly could.

Q. And you couldn't get by the machine?

A. No.

Q. Were you going as fast when you met Sorlie as you were when you met Dr. Knudson?

A. Of course, I see—I thought that—*I didn't think he could control his auto and when I saw that I turned the gasolene off, but it was too late.*

Q. Turned it all off?

A. Yes, *but it was too late to do anything, of course, I couldn't do anything to save myself then before the strike.*

The foregoing is all in response to his own counsel.

On cross-examination he testifies:

Q. Was there sufficient room there for you to pass if you had turned to the left of Sorlie's machine, as you wanted to?

A. Well, if I turned right away when I passed the second automobile.

Q. What is that?

A. When I passed the second automobile I probably could, *but I expected him to turn the same as everybody does till it was too late.*

As corroborative of plaintiff's statement that he was going at a low speed, he has offered the testimony of Johren, who saw plaintiff from a distance of a quarter of a mile, half a mile from the place of collision, and who says that his "best guess" was that when witness saw plaintiff, the latter was making 18 or 20 miles an hour. Dunley, who had repaired the motor cycle sometime before, said he had reduced the speed of it somewhat to take a knock out of it, so that it did not go as fast as a new one, but that he couldn't tell what speed it would develop. And one Lerum also testified that the north rut was $1\frac{1}{2}$ inches or so deep and only about a foot from the ditch on that side. This fairly and accurately states the testimony upon which the jury found that Sorlie was negligent, and that his negligence contributed to plaintiff's injury, and that plaintiff was not guilty of contributory negligence.

It is impossible to read the record without coming to the conclusion that the facts were that plaintiff was running at a high rate of speed from Hillsboro to the scene of the accident, and with little regard to his own safety or the safety or rights of others. Without exception, every rig he passed went into the ditch to avoid him. It is significant also that everybody he met noticed that Nordby was going "awful fast," and that several of them remarked about it; and that all agree that at no time did he slow up as he approached, but "whizzed" by at full speed. The distance that he had come in the elapsed time is corroborative proof of sustained excessive speed. He does not claim to have turned out or slowed up, not even in meeting Sorlie, except, as he says, "when it was

too late;" and that he claims was because of Sorlie's speed, not his own. If plaintiff was insensible to his own speed, it was but natural for him to believe that Sorlie, and not himself, was speeding. But had he struck any other of the half dozen rigs he passed before colliding with Sorlie, under the proof he would have been guilty of contributory negligence as a matter of law. And that he was making no exception as to Sorlie is proven by his own statement that he expected him to get out of the way "as them others had done." An accident prevented Sorlie from being out of his way. The condition of the road kept him in the way, and plaintiff dashed into his rear wheel. The physical, admitted, and uncontroverted fact that he safely passed the front wheel and the side of the auto and struck the hub of the hind wheel demonstrates that the auto must have been attempting to get out of the rut, and must have been standing at considerable of a diverging angle to his roadway. This corroborates Sorlie and is substantiated by plaintiff's own testimony that he saw Sorlie turning the front wheels out of the ruts. Sorlie in this position must have been going slow, or, as he says, he would have been out of the roadway or overturned.

Eliminating, as we must, the fact that Sorlie was on the north side of the road, the proof discloses that he did nothing negligent, neither did he omit to do anything that a reasonably prudent man could have done to avoid the accident. Admitting for the sake of further analysis plaintiff's testimony that Sorlie appeared unable to control his machine and because thereof was negligent, and that the same contributed to the accident, nevertheless under the undisputed facts and every reasonable inference therefrom, and from plaintiff's own testimony and admissions, plaintiff was guilty of want of control and therefore guilty of contributory negligence. He says he made no attempt to get out of the rut, and the only reason he gives for it was, "I probably would kill myself to go on there;" i. e., to his right and into the ditch, which he says in the same breath "was pretty near square up and down." It can be assumed that the situation in which he had placed himself was a dangerous one, yet the very situation conclusively proves that he had no control over his machine. When he had shut off the gasolene, he was too close to the approaching automobile to avoid collision. It is a self-evident fact that had he been in control and using the degree of care required of him, he with safety could have either run his machine into

the ditch or have alighted therefrom.   That he could do neither establishes his negligence when attempting to pass the approaching vehicle. The condition of the road or its ruts does not alter his duty to use care. The statute means what it says in § 2976L, Comp. Laws 1913, that "no person shall operate a motor vehicle on the public highways at a rate of speed greater than is reasonable and proper, *having regard to the width, conditions and use of the highway at the time* and the general and usual rules of the road, or so as to endanger property or the life or limbs of any person."   Plaintiff was bound to regard the width, condition, and *use* made of this highway at that point, as well as the rules of the road, and could not without negligence on his part rely entirely upon Sorlie's getting out of his track "the same as them other ones had done" all the way from Hillsboro there.   He could not expect others to have more regard for his safety than he had himself.   It was his duty to have his machine under control when passing.

True, it was Sorlie's duty to use reasonable diligence to obey the rules of the road and clear for the plaintiff the north pathway of the roadway. But the law does not make Sorlie an insurer of his ability to do so, as "the width, condition, and use of the highway at the time" are to be considered with the rules of the road in that respect.

To hold otherwise would make him an insurer against the results of unavoidable accident, as well as culpable negligence of the approaching party, and announce a rule of law that would permit an approaching vehicle like plaintiff's to dash ahead at full speed reckless of road conditions, with the other party an insurer against such recklessness.   The duties owing by each driver toward the other are reciprocal, equal, and alike, with no advantage of one over the other, under the law and the rules of the road.   It is clear from plaintiff's testimony that he failed to realize that he owed any such reciprocal duty to Sorlie, but instead assumed that the latter must get out of his track in any event and would do so, and that he was excused from exercising any care for his own safety.   Plaintiff was bound in law to be in a position to allow Sorlie time to get out of his track, as admittedly he was endeavoring to do. If plaintiff's recovery can be sustained under this proof, it is hard indeed to conceive of such a case where a recovery would not be upheld. When, from out of plaintiff's own mouth, accompanied by the unquestioned and undenied proof of his previous and almost contemporaneous

successive acts of culpable negligence establishing his wanton reckless-
ness for the entire trip until he struck Sorlie, and when he might have
received the same injury from any of the .others had it not been for
their exercise of undue care toward him, coupled with the reasonable
probability that his conduct was the result of a mind more or less dulled
into insensibility of speed or danger from the admitted use of a con-
siderable amount of intoxicants that afternoon together with as nearly
conclusive proof by Sorlie that he did no act upon which negligence
could be based as can in ordinary probability usually be established
by proof,—when all of this is considered, to affirm this recovery is to
close one's eyes to every reasonable probability and established fact,
and, because a verdict has been found, announce a precedent that will
in practical effect make every automobile driver or owner, at the whim
of a careless jury, the absolute and unqualified insurer against, not his
own negligence, but that of every vehicle that attempts to pass another
in however a negligent manner. It is true that a jury has passed upon
the facts, but it is equally true that in doing so it must have closed its
eyes to the facts and any and all reasonable inferences from them.

And the paucity of plaintiff's proof as set forth in his own brief well
illustrates the extreme to which plaintiff's counsel has been driven in
his attempt to uphold this verdict and establish his major premise that
*all* the evidence without contradiction does not favor defendant. He
calls attention to what he claims was the fact that "plaintiff had no
difficulty in meeting or passing vehicles on the highway, other than the
defendant's auto." The reason is plainly apparent from the proof. Of
course *he* did not, because, under the uncontroverted proof, every ve-
hicle without exception took to the ditch in meeting him or when over-
taken by him. He says "his motor cycle was not in condition to develop
speed on that day." To find this to be fact would ignore the established
fact that plaintiff had gone more than twice as far as Sorlie in the same
length of time, as well as also to overlook the testimony of ten witnesses
estimating plaintiff's speed immediately preceding the accident (and
all of which testimony is undenied by plaintiff himself) variously at
from 35 to 65 miles an hour, and corroborated by contemporaneous oc-
currences and remarks made.

And in the same way plaintiff's statement that he was not riding to
exceed 15 or 18 miles an hour on meeting Sorlie is condemned as untrue

by the facts surrounding the accident, and that he failed to alight or turn out, and thus avoid injury. It was impossible for Sorlie to have been going at an excessive speed from the admitted position of his auto, partly in the ruts and partly out, when plaintiff was approaching, immediately preceding as well as at the time of the collision, also disposing of plaintiff's testimony that defendant was coming "awful fast" and "struck him like a bullet." The comparison was misapplied; plaintiff was the bullet.

Plaintiff lays emphasis upon the proposition that questions of credibility were for the jury, and has attempted to discredit about all of defendant's witnesses by reason of friendship, acquaintance, or association with Sorlie. Of course, credibility was for the jury. But the main and decisive facts are out of the mouth of the plaintiff or stand admitted.

When the motion for a directed verdict of dismissal was made at the close of the case with the entire history of plaintiff's trip that day in evidence and undenied, taken with plaintiff's own testimony, there was no issue for the jury upon whether plaintiff was guilty of contributory negligence. A finding that he was not guilty of contributory negligence cannot be upheld. The case should have been dealt with accordingly. The judgment and order appealed from is ordered reversed, and judgment of dismissal of this action is ordered.