G. M. GREENE, Appellant,

v.

Matt WERVEN, as Parent and Natural Guardian of Lorraine Werven, a Minor, and Phillip Stremich, Appellees.

No. 16289.

United States Court of Appeals Eighth Circuit.

Feb. 19, 1960.

Philip B. Vogel, Fargo, N. D., for appellant.

J. Gerald Nilles, Fargo, N. D., for appellees.

Before JOHNSEN, Chief Judge, and MATTHES and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

This diversity-intersection case, removed from state court, resulted in jury verdicts (in the initial action, in the third-party action, and on counterclaims in both actions) in favor of the plaintiff Lorraine Werven (later Lorraine Werven Shambaugh) and of the third party defendant Phillip Stremich and against the defendant-third party plaintiff G. M. Greene. Greene has appealed from judgments entered pursuant to the verdicts.

The collision took place in the early afternoon of October 9, 1956, at an unobstructed intersection of two gravel non-arterial roads about one-half mile south of Leroy in Pembina County, North Dakota. The day was clear, the sun was shining, and the roads were dry. Lorraine, who was then fifteen years of age and who possessed a North Dakota driver's license recently acquired, was driving a 1953 Chevrolet automobile owned by Stremich. She was proceeding west on the one road. Greene was traveling north on the other road. Lorraine was thus approaching the intersection from Greene's right. Greene was driving a new 1956 two ton heavy duty Dodge truck loaded with six yards of gravel. The Chevrolet and the Dodge collided at the intersection, with the automobile striking the truck on the right rear wheel. The truck came to rest upside down some distance north of the intersection. Both Lorraine and Greene sustained personal injuries and both vehicles were damaged.

Lorraine and Stremich and Lorraine's sixteen year old sister Mae had been working that day in a potato field. Stremich was moving a tractor to another field a few miles away and had asked Mae "to see that" his car was moved there. Mae, who had a permit to drive but not a driver's license, asked Lorraine to drive the car "because she had no driver's license and thought Mr. Stremich would like it better." Neither of the girls had ever driven the Chevrolet before. While Lorraine was taking the car to the other field the accident occurred.

Lorraine testified that she tried the brakes on the Stremich car on two occasions before the accident and "they weren't high like they should be" but that when she put her foot on them again or pumped them once "they were high" and then would operate just like a normal brake and stop the car.

There seems to be no dispute as to the foregoing facts.

So far as the details of the accident itself are concerned, there is some conflict in the evidence. Lorraine testified that she was traveling about 35 miles per hour; that she looked for other traffic when she was about 200 yards from the crossing; that she saw the Greene truck coming; that it was about 300 yards south of the intersection when she first saw it and was going about 30 miles per hour; that "it looked to me it was slowing up so I just went right ahead thinking I had the right of way"; that she did not continue to watch the truck as they both approached the intersection;

that she did not slow down from her 35 miles per hour speed but maintained a consistent speed; that when she was about to cross, "the truck shot out in front of me and it was too late to stop"; that at that time she put on her brakes once and they did not work; that there was a second truck on the crossroad; that this second truck was north of the intersection and headed south and "it was stopped with its left signal light flashing"; and that she knew "gravel trucks were hauling on this particular stretch of road".

Greene testified that he was traveling north about 25 miles an hour; that his road had sand holes in it which compelled a reduced speed; that at 25 miles an hour, he could, with the truck loaded, stop in 50 feet; that he could see a half mile down the other road to the east; that when he was 400 feet from the intersection he saw a car approaching from the right and going west; that he "did not pay any particular attention to it that far away" but "knew it was coming"; that when he was about 300 feet from the intersection he thought he looked and saw the car again; that he presumed it was the Stremich car; that he looked again when he was between 75 and 100 feet from the intersection; that the other car was traveling "at least 60 miles an hour"; that it was possible that the other car was going 45 miles an hour; that he had seen a truck coming from the north with its left signal light on to make a left turn; that he put his own signals on for a left turn; that the other truck swung to the left and suddenly stopped; that he saw the Chevrolet coming past that truck; that his own truck was in the intersection first; that the point of impact was "a trifle over halfway north of the center of the intersection"; and that his truck to some extent is topheavy when it is loaded.

The driver of the other truck testified that he noticed the Chevrolet and the Dodge when he was about a quarter of a mile north of the intersection; that the truck was then about the same distance south of the intersection and the Chevrolet close to a half mile east; that the car was going between 45 and 50 miles an hour; that "there is no question but what the truck entered the intersection first"; that he did not think he had signalled "because I sure wasn't ready to turn and this trouble was coming on this intersection"; that the two vehicles would have had to enter the intersection "within a split second of each other"; and that the reason he felt the truck entered the intersection first was because the car hit the truck toward its rear end.

Stremich testified that the brakes on his car were good the morning of the accident when he stopped the automobile in the field; that he had never had any trouble with the brakes; and that he had not had them adjusted, repaired or checked in the three years he owned the car.

A patrolman testified that six days after the accident he had examined the Chevrolet when it was at a body shop; that he got into the car and checked the brakes by stepping on the brake pedal; that they went to the floorboard with no resistance whatever; that he tried pumping them and had very little resistance accumulated; that he did not know whether the brake lines were intact because he did not examine them; that the front end of the car was badly smashed; that he did not open the master cylinder; and that the car had been sitting out since the accident in an open unfenced lot. A deputy sheriff testified that he was called to investigate the accident; that he talked to the plaintiff that afternoon; that she then had said she was traveling between 35 and 40 miles an hour, had seen the truck but thought it was going to stop and she didn't stop because "the brakes were faulty"; and that there was a distance of 85 feet between the spot in the intersection where the accident debris had accumulated to where Greene's truck came to a stop.

Greene, at the conclusion of the testimony, moved for directed verdicts in his favor on the claims against him and on his claims against the appellees, and,

after the verdicts and judgments had been entered, also moved for judgment notwithstanding the verdicts or, in the alternative, for a new trial. These motions were all denied. Here he urges that the trial court erred in denying these motions. The appellant's arguments are directed to the inadequacy of the Chevrolet's brakes, to Lorraine's failure to maintain a proper lookout and to yield the right of way to Greene, and to Lorraine's being the agent of Stremich.

As is so often the case in these personal injury actions, the basic question on appeal here is whether the evidence is sufficient to support the verdicts and judgments against the appellant. We once again call attention to the principles governing this situation as enumerated by this court in Coca-Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 860–861:

"In considering the question of the sufficiency of the evidence to support the verdict, there are several general rules to be kept in mind. (1) All of the facts which the plaintiff's evidence reasonably tends to prove must be assumed to have been established, and all inferences fairly deducible from such facts much be drawn in his favor. * * * (2) It is only where the evidence is all on one side or so overwhelmingly on one side as to leave no doubt what the fact is that the court should direct a verdict. * * * (3) The question of negligence is usually one of fact for the jury, and it is only where the evidence, even though it be uncontradicted, is such that all reasonable men must draw the same conclusion from it that the question of negligence becomes one of law for the court. * * * (4) Where inconsistent inferences reasonably may be drawn from the evidence, it is for the jury to determine which of the inferences shall be drawn. * * * (5) When the sufficiency of the evidence to make a case for the jury presents a doubtful question of local law, this Court will accept the views

of the trial court unless convinced of error. * * * (6) The burden of demonstrating error is upon the appellant. * * * "

Further, as this court has also noted, in United States Fire Insurance Co. v. Milner Hotels, Inc., 8 Cir., 253 F.2d 542, 546–547, questions of negligence and of proximate cause are, under North Dakota law, ordinarily for the jury:

"In relation to what has been said, it must conformingly be borne in mind that under North Dakota law, as generally, negligence and proximate cause are not ordinarily questions which may be taken from the jury. They become questions of law only when the state of the record is such that reasonable men can draw but one conclusion therefrom'. Froh v. Hein, 76 N.D. 701, 39 N.W. 2d 11, 13; Geier v. Tjaden, N.D., 74 N.W.2d 361, 364.

"Negligence and proximate cause will become transformed from questions of fact into questions of law rather on probative deficiency than on probative abundance. Thus, no matter how strong the evidence of a party, who has the burden of establishing negligence and proximate cause as facts, may comparatively seem to be, he is not entitled to have those facts declared to have reality as a matter of law, unless there is utterly no rational basis in the situation, testimonially, circumstantially, or inferentially, for a jury to believe otherwise. Nor is a court required to set aside a verdict in such a situation, just because the judgment of the jury may have been strange and unusual on the evidence in the case."

"The most, therefore, that can be said of the result in the present situation is, as we expressed it in Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 444, that, 'if the verdicts are erroneous, the error was an error of fact committed by the jury and not an error of law committed by the court.' "

The Supreme Court of North Dakota in recent cases has repeatedly emphasized that "Questions of negligence and of proximate cause are ordinarily questions for the jury. They become questions of law only when the state of the record is such that reasonable men can draw but one conclusion therefrom." Lusty v. Ostlie, N.D., 71 N.W.2d 753, 756; Spenningsby v. Peterson, N.D., 67 N.W.2d 913, 915; Geier v. Tjaden, N.D., 74 N. W.2d 361, 364; Schweitzer v. Anderson, N.D., 83 N.W.2d 416, 419; Satterland v. Fieber, N.D., 91 N.W.2d 623, 625; King v. Railway Express Agency, Inc., N.D., 94 N.W.2d 657, 659; Erdahl v. Hegg, N.D., 98 N.W.2d 217, 220.

On the brake issue we are met at the outset with appellant's suggestion that, because of the faulty character of the brakes on the Stremich car, and her knowledge thereof, Lorraine and also Stremich are negligent as a matter of law under the North Dakota brake statute, § 39–1123,[1] North Dakota Revised Code of 1943, and under this court's North Dakota case of Hart v. Grim, 8 Cir., 179 F.2d 334.

In Hart v. Grim, the trial court read to the jury the provisions of § 39–1001 and § 39–1003, NDRC, 1943, which required driving on the right and passing to the right, and instructed the jury that it was negligence for one to drive on the left side of a highway while traveling on an upgrade where vision is obscured. This court said, at page 337 of 179 F.2d:

"In support of his contention that the giving of this instruction was reversible error, defendant cites the case of Nordby v. Sorlie, 35 N.D. 395, 160 N.W. 70, L.R.A.1917B, 753. In that case the court held that the fact that the defendant was upon the wrong side of the highway was not, standing alone, sufficient to give rise to an assumption of negligence, and it is argued that the proof of the violation of traffic regulations is not absolute proof of negligence. We think counsel have misconstrued the court's instruction. The conclusion of negligence is not based alone upon the fact that the defendant may have been driving on the wrong side of the highway, but the jury was told in effect that if they found that the vehicle was being driven on the wrong side of the highway 'while traveling on an upgrade where the vision is bound to be obscured,' then this would be negligence. Under the undisputed evidence the driver of the defendant's truck was on the wrong side of the road while he was going uphill and while he was unable to see ahead of him farther than the brow of the hill. * * *

"The rule seems to be well stated in 4 Blashfield's Cyclopedia of Automobile Law and Practice, 4, § 2681, page 168, where it is said, ' * * * The rule supported by the great weight of authority is that a violation of traffic regulations of state or municipality so far as they embody express commands governing the use of vehicles is negligence per se, which, if the proximate cause of the injury complained of will constitute a cause of action against the violator. * * * ' "

The appellant now presses upon us this excerpt from Blashfield and would regard the brake statute as "no mere rule of the road or traffic regulation" but, instead, as an "express command" of the type specified in that quotation,

[1] "39–1123. Brakes on Motor Vehicles and Motorcycles; Requirements. Every motor vehicle, when operated upon a highway, shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels and shall be so constructed that no part which is liable to failure shall be common to the two. A motorcycle need be equipped with only one brake. All such brakes shall be maintained in good working order and shall conform to regulations promulgated by the registrar not inconsistent with this section."

or, in other words, that a violation of the North Dakota brake statute is, by our own opinion, negligence per se.

We feel that Hart v. Grim is not so to be read. There is no room for dispute as to the correctness of the jury instruction under consideration in that case involving, as it did, a fact situation not only of travel on the left side of the road but, as well, of travel on an upgrade and where vision was obscured. The reference to Blashfield signifies nothing more than intended support for that conclusion.

It is to be noted, too, that in the Hart case the defendant had asserted that under North Dakota law the violation of the keep-to-the-right statute "is not negligence per se but is merely evidence of negligence." The single North Dakota case cited could be said to support that proposition, for it was there held that the defendant as a matter of law was not negligent even though he was on the left side of the highway. In Hart v. Grim this court was careful to point out that the instruction of negligence was not based on the *sole* fact that the defendant was on the left. It thus did not deny that defendant's asserted legal proposition.

It is interesting to note that since 1950, when Hart v. Grim was decided, the Supreme Court of North Dakota, in a series of cases, has held that violations of statutory rules of the road, (other than speed limitations), *standing alone,* are only evidence of negligence and not negligence per se. Knudsen v. Arendt, 79 N.D. 316, 56 N.W.2d 340, 343 (the right of way statute, § 39–1017, NDRC 1943); Spenningsby v. Peterson, supra, at page 915 of 67 N.W.2d, and Renschler v. Baltzer, N.D., 95 N.W.2d 574, 576 (the statutes prohibiting certain parking of a vehicle on the traveled portion of a highway, § 39–1022, NDRC 1943); Imus v. Huber, N.D., 71 N.W.2d 339, 341 (the same "keep-to-the-right" statutes, § 39–1001 and § 39–1003, NDRC 1943, which were under consideration in Hart v. Grim); and Mills v. Roggensack, N.D., 92 N.W.2d 722, 726 (the statutes concerning turns and signals to turn, § 39–1008, § 39–1035 and § 39–1038, all of the 1957 Supplement to NDRC 1943). The speed statute (§ 39–0902, NDRC 1943) was apparently similarly characterized, Attleson v. Boomgarden, N.D., 73 N.W.2d 448, 450, at least until its language was changed by Chapter 254, Laws of North Dakota 1955, Erdahl v. Hegg, supra, at pages 222 and 224 of 98 N.W.2d.

■ In the light of these cases we conclude with assurance that it is the law of North Dakota today that a violation of the brake statute, § 39–1123, *standing alone,* is not inevitably negligence per se and we emphasize that Hart v. Grim does not compel a contrary conclusion. As in the Hart case, a fact situation may well arise, involving violation of the North Dakota brake statute, where an instruction of negligence is entirely proper. That situation, however, is not present in the case before us.

This brings us, then, to the ultimate question of the sufficiency of the brakes and lookout evidence to support the verdicts.

■ The brake issue: Lorraine herself testified that twice before the accident she had tried the brakes on the Stremich car and that they worked when she pumped them once. Stremich testified that the brakes on his car were good in the morning when he stopped it in the field and that he had never had any trouble with them. This testimony was sufficient, in the light of the general rules outlined above, to raise a question of fact for the jury as to whether the degree of deficiency involved in the brakes constituted negligence and was a proximate cause of the accident; it was also sufficient to sustain the verdicts on this issue.

The lookout and right of way issue: The appellant stresses Lorraine's testimony that, when Greene was 300 yards from the crossing she saw his truck but "went right ahead" and "didn't watch him at all until I got to the intersection"

and maintained her 35 miles an hour speed. Appellant also stresses the two North Dakota cases of Knudsen v. Arendt, supra, and Johnson v. Sebens, N.D., 86 N.W.2d 386. These cases involved collisions at unobstructed non-arterial intersections, and it was held that the respective plaintiffs were negligent as a matter of law and that that negligence contributed proximately to the accidents.

These cases are not controlling here. In Knudsen, the plaintiff, as Greene here, did not have the directional right of way and, as the court observed, at pages 342–343 of 56 N.W.2d, "There is no evidence in the record as to the lookout kept by either driver except such as may be contained in the inference that the accident would not have happened if they had kept a proper lookout. That inference is equally applicable to both drivers and there is no basis upon which a jury could found a conclusion that one driver kept a proper lookout and the other did not." In Johnson v. Sebens, the plaintiff and defendant were the only eye witnesses, and the inference was drawn, at page 390 of 86 N.W.2d, that "neither driver saw the other", and that "neither party kept a proper lookout"; as a consequence, the plaintiff was negligent as a matter of law for he had either not looked or, having looked, had not seen what was plainly to be seen.

 Here, however, there is more than mere inference. There is evidence that Greene was 300 yards south of the intersection when Lorraine was only 200 yards east of it; that Greene's truck then looked like it was slowing down and going to stop; that Lorraine was on Greene's right; that Greene in fact had slowed down to 20 miles an hour and shifted into fourth gear; that Greene for the third time saw the Chevrolet coming from the right when he was 75 feet from the intersection; that he could have stopped in 50 feet; that another truck was approaching the intersection

from the north and to Lorraine's right; and that the vehicles of Lorraine and Greene entered the intersection at approximately the same time.[2] It is a reasonable conclusion from this testimony, if it is to be believed (as it was by the jury here), that Greene should, irrespective of Lorraine's lookout, have yielded the right of way, could have done so insofar as apparent control of his truck was concerned, and was properly regarded by Lorraine as about to do so. While Anderson v. Schreiner, N.D., 94 N.W.2d 294, is distinguishable upon its facts (because the driver there corresponding to Lorraine here was on an arterial highway), the reasoning of the North Dakota Supreme Court is revealing. Except for the arterial character of the one highway, the facts in that case are not dissimilar from the one before us. In fact, they are more favorable to the defendant, for the court first held that the plaintiff there was negligent as a matter of law in having no lookout. It then noted the logical difficulties involved in the secondary question of proximate cause and said, at page 299:

"We think the correct answer to the problem is to be found in the fact that two separate and distinct types of negligence are involved. Whether an observing driver has been negligent, and whether his negligence was a proximate cause, depend on what he does after he has observed the circumstances and reached a judgment with respect thereto. The negligence of the non-observing driver is in not maintaining a lookout. In a sense this negligence is remote, because whether the failure to look proximately causes an injury depends, not upon the lack of observation, but upon what the driver does as a result of not looking. Therefore it is reasonable to say that if a jury may find that the conduct of an observing driver, who was aware of an approaching

2. That is, within the meaning of the North Dakota right-of-way statute, § 39–1017, NDRC 1943, as interpreted by the North Dakota Supreme Court in Knudsen v. Arendt, supra, at page 343 of 56 N.W.2d.

car and the possible danger at an intersection, was reasonable in the circumstances, they may also find that the conduct of a non-observing driver, who was unaware of the danger, was reasonable in identical circumstances, even though his ignorance of possible danger was due to his own negligence. The ultimate jury question is whether the conduct of the driver on the arterial highway was reasonable in the light of what he saw or should have seen. Because of his qualified right to rely on his preferred status there is no inescapable inference that a driver upon an arterial highway, who hadn't looked for cars approaching on an intersecting highway would have behaved any differently if he had looked. It follows that whether his negligence in not looking was a proximate cause, was a question for the jury."

Replacing the factual preference of the arterial highway of that case with the factual preference of Lorraine's being on the right in this case, the quotation is apposite and indicative of the North Dakota law. See, also, for comparison as to the facts, Zettle v. Lutovsky, 72 N.D. 331, 7 N.W.2d 180, and Braaten v. Grabinski, 77 N.D. 422, 43 N.W.2d 381. We conclude that the trial judge was right in submitting to the jury the questions of negligence and proximate cause on the lookout and right of way issue and that there was sufficient evidence to sustain the verdicts.

In view of the foregoing, it is not necessary for us to consider any question of agency and the imputation to Stremich of negligence on the part of Lorraine.

 The appellant in his brief suggests that Lorraine acted wilfully and with a deliberate disregard for the rights of others, and that, therefore, if there is any negligence on Greene's part, it is no bar to his action. We feel that the record does not support a finding of wilful action by Lorraine. In any event, this issue was not raised by the pleadings or in the trial court and is not for consideration here. Gilby v. Travelers Insurance Co., 8 Cir., 248 F.2d 794, 797; Hartford Accident & Indemnity Co. v. Shaw, 8 Cir., 273 F.2d 133; Arkansas Valley Feed Mills, Inc. v. Fox De Luxe Foods, Inc., 8 Cir., 273 F.2d 804.

The appellant's claim that the court erred in denying the motion for a new trial is of no avail. That motion is directed to the discretion of the trial court and this court will reverse only where abuse of that discretion is apparent. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 436; Stofer v. Montgomery Ward & Co., 8 Cir., 249 F.2d 285, 288; Johnson v. Hill, 8 Cir., 274 F.2d 110. We find no abuse in this case.

Affirmed.