Merle A. GLAWE, Appellant,

v.

George RULON, Appellee.

No. 16513.

United States Court of Appeals
Eighth Circuit.

Nov. 30, 1960.

W. D. Howard, Minneapolis, Minn., for appellant; and E. A. Danforth, Minneapolis, Minn., on the brief.

Philip B. Vogel, Fargo, N. D., for appellee; and Paul Pancratz, Fargo, N. D., on the brief.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for the defendant (appellee), George Rulon, based upon the verdict of a jury in a personal injury action brought against him on January 27, 1959, by Merle A. Glawe (appellant). Jurisdiction is based on diversity of citizenship and amount in controversy. The case was tried in January, 1960, in Fargo, North Dakota.

The accident out of which the action arose occurred in Fargo near the signal-controlled intersection of Fourth Street and First Avenue North on the morning of February 2, 1957, when the automobile of Rulon, which he was driving south on Fourth Street behind a taxicab being driven on that street in the same direction by Glawe, collided with the rear of that vehicle when it stopped for a red light at the intersection, about four feet behind another car. The force of the collision moved the taxicab a few feet forward, but not far enough to strike the car ahead. Part of the front bumper guard of the Rulon car became locked under the rear bumper of the taxicab. Apparently no damage of consequence was done to either vehicle.

Glawe testified that, just before the accident, he had his right foot on the brake and was about to light a cigarette, when his cab was "violently hit" from the rear by the Rulon car. Asked as to what happened to him when that occurred, his answer was:

"A. I was throwed forward on the seat with my chest toward the steering wheel, and I slid down off the front of the seat and caught— at the same time my foot slipped off the brake throwing it and twisting it to the right, and I slid down on the small of my back on the front seat of the cab.

"Q. Which leg was it that you said was twisted?

"A. The right leg.

"Q. Your right leg, is that the one that you subsequently had trouble with?

"A. Yes."

He was asked how he felt, and answered: "I was shook up from it. I didn't know what had hit me."

The testimony of Rulon was, in substance, that on the day of the accident the streets of Fargo were icy and slippery; that as he drove south on Fourth Street he was going about 10 to 15 miles an hour; that he stopped at intersections where there were stop signs; that he observed the taxicab ahead of him as he approached the intersection of Fourth Street with First Avenue North; that when about 30 feet behind the cab he realized that it had stopped; that he applied his brakes, which failed to stop the car because the wheels slid on the icy surface of the street, causing his car to skid into the taxicab.

The record shows that immediately after the collision Glawe got out of his cab and Rulon out of his car, and that together they tried to get the bumpers separated, but finally had to call a tow truck, which raised the rear of the taxicab sufficiently to permit Rulon to disengage the bumper guard of his car.

Glawe attributed to this accident a serious and disabling condition of his right hip, known as avascular necrosis, which developed some time after the accident and which meant, in his case, death of the head of the femur, a part of his right hip joint, from loss of blood supply, necessitating its removal by surgery on January 27, 1958, and the replacement of it with a metal ball. The expert medical testimony produced by Glawe was to the effect that the primary and most common cause of avascular necrosis is trauma causing damage to the blood supply of a bone. In the opinion of Doctor Moe, professor of orthopedic surgery at the University of Minnesota, who performed the operation on Glawe and was called by him to give expert testimony, the necrosis was due to the accident of February 2, 1957. The position of Rulon was that that accident had nothing to do with Glawe's subsequent disability. Rulon's medical evidence was to that effect.

At the close of all the evidence, each of the parties moved for a directed verdict. Both motions were denied. The case went to the jury on two issues: (1) whether Rulon was negligent in the operation of his car; and (2), if so, whether his negligence was the proximate cause of injury to Glawe. The jury returned a general verdict for Rulon. The record, therefore, does not show whether the verdict was based upon a finding by the jury that Rulon was not negligent or upon a finding that his negligence, if any, did not cause Glawe's subsequent disability. Hence the appellant has been obliged to furnish this Court with a record on appeal which contains not only all the evidence relating to the issue of liability, but also all that relates to the issue of damages. The taking of a special verdict under subdivision (a) of Rule 49 of the Federal Rules of Civil Procedure, 28 U.S.C.A., or a general verdict with interrogatories under subdivision (b) of that Rule would have disclosed the basis of the jury's determination and would have reduced to a minimum the questions which could be raised on appeal and the cost of the record on appeal.

■ It must be kept in mind that this Court will not concern itself with doubtful issues of fact which were for the jury nor with doubtful issues of local law as to which the trial court has reached a permissible conclusion. Webb v. John Deere Plow Co., Inc., 8 Cir., 260 F. 2d 850, 852. In that case we said (at page 852): "Personal injury cases such as this are essentially fact cases, and it is rarely that a party aggrieved by the verdict of the jury can, on appeal, successfully visit his grievance against the jury upon the trial court." See, also, Greene v. Werven, 8 Cir., 275 F.2d 134, 137–138. It seems safe to say that as a general rule the verdict of the jury marks the end of such a case.

It is contended on behalf of Glawe that the trial court should have directed a verdict in his favor on the issue of liability. There is, as the jury was in-structed, a statutory rule of the road in North Dakota reading as follows:

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." (Subsection 1 of Section 39–1018, North Dakota Revised Code of 1943, 1957 Supplement.)

■ A violation of the rule is not negligence per se, but is merely evidence of negligence. Thus, in Renschler v. Baltzer, N.D., 95 N.W.2d 574, at page 576, the Supreme Court of North Dakota said: "It is well settled that violations of statutory rules of the road, in cases not involving speed limits, are evidence of negligence and not negligence per se. Attleson v. Boomgarden, N.D., 73 N.W. 2d 448 [450–451] and cases cited therein." See, also: Imus v. Huber, N.D., 71 N.W.2d 339, 341; Spenningsby v. Peterson, N.D., 67 N.W.2d 913, 915; Knudsen v. Arendt, N.D., 56 N.W.2d 340, 343; Greene v. Werven, supra, pages 138–139 of 275 F.2d.

■ The trial court did not err in determining that, under the evidence and the applicable North Dakota law, the issue of the liability of Rulon was for the jury and in denying the motion of Glawe for a directed verdict.

■ At the trial, Dr. Moe, the plaintiff's medical expert, as we have already indicated, expressed the opinion that the cause of Glawe's avascular necrosis was the accident of February 2, 1957,—relying, of course, upon Glawe's account of it. At the conclusion of his evidence and while the trial was still going on, Dr. Moe left Fargo. Dr. Swanson, who was shortly thereafter called by the defendant as an expert, gave it as his opinion that the accident did not cause the necrosis, and that it was caused by "a degeneration or an osteoarthritis of the hip." Dr. Swanson was the defendant's last witness. He concluded his testimony shortly after noon on the final day of the trial. The court recessed until 2:00 p.

m. A few minutes before court reconvened, counsel for Glawe asked the court, in chambers, for an adjournment of the trial until 4:00 o'clock to enable him to procure a Dr. Landa as an expert witness to testify that avascular necrosis is not ever caused by osteoarthritis. The request was denied, mainly on the ground that to grant it would unduly prolong the trial, which already had, on prior occasions, been recessed for the convenience of the plaintiff. The request was addressed to the discretion of the trial court, which was charged with the duty and responsibility for the orderly and expeditious conduct of the trial. This Court cannot retroactively substitute its discretion for that of the trial judge, who had the feel of the case, nor can it hold that his denial of the request was an abuse of discretion amounting to reversible error.

Glawe was in St. John's Hospital at Fargo from October 13, 1957, until October 18, 1957, with a painful condition of his right hip—apparently mistakenly diagnosed at the hospital as "Protruded Disc". In the ordinary course of the hospital's operation, it kept a medical record of Glawe while there, including his complaints, his subjective and objective symptoms, the diagnosis made of his condition and the treatments given him, together with the results. The defendant offered the medical record in evidence, after laying the proper foundation for its introduction. Counsel for Glawe made no objection to the admission of the records except as to pages 2 to 10 inclusive, which it was contended were inadmissible because they contained opinions and conclusions of medical men not available for cross-examination and did not contain the ordinary and usual business entries of a hospital. To have received the records without the pages objected to, would have been the substantial equivalent of receiving the records without their contents. The trial court received the records. That, it is asserted, was reversible error. We do not agree. Apparently the only recitals prejudicial to the plaintiff in the medical record are to the effect that upon the day Glawe entered the hospital—October 13, 1957—he stated that he "had pain in his right hip a year ago," that "3 weeks ago he noted again pain in the right hip," and that "He can not remember of any accidents on his hip." In rebuttal, Glawe testified that, before entering the hospital, he had taken "hypodermic shots"; that he did not remember going into the hospital or being interviewed by anyone there or giving any history at the time he entered. The medical records received in evidence, it seems to us, are the kind of records which any hospital worthy of the name would normally and necessarily keep in the regular course of its business of caring for and attempting to cure the ill and the injured. We think the medical record in its entirety was admissible under 28 U.S.C. § 1732. See: Woodward v. United States, 8 Cir., 185 F.2d 134, 137, reversed on other grounds 341 U.S. 112, 71 S.Ct. 605, 95 L.Ed. 806; Missouri-K.-T. R. Co. of Texas v. Ridgway, 8 Cir., 191 F.2d 363, 367, 29 A.L.R. 2d 984; Medina v. Erickson, 9 Cir., 226 F.2d 475, 482, certiorari denied 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446; Shaffer v. Seas Shipping Company, Inc., 3 Cir., 218 F.2d 442, 443, certiorari denied 348 U.S. 973, 75 S.Ct. 534, 99 L.Ed. 758; Rule 43(a) Federal Rules of Civil Procedure, 28 U.S.C.A.

Since the plaintiff, under the evidence and the applicable law, was not entitled to a directed verdict, his post-trial motion for judgment notwithstanding the verdict for the defendant was properly denied. The plaintiff's motion for a new trial was addressed to the discretion of the trial court, and no error can be predicated upon its denial. See Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 436 and cases cited, and at page 444. See, also, Greene v. Werven, supra, at page 141 of 275 F.2d.

The judgment appealed from is affirmed.