# WILLIAM LORENTZ v. AETNA LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT.[1]

April 24, 1936.

No. 30,822.

*Wieland & Sullivan,* for appellant.

*Ryan, Ryan & Ryan* and *W. C. Kelehan,* for respondent.

[1]Reported in 266 N. W. 699.

HOLT, JUSTICE.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

Defendant is a life insurance company and issued a group life insurance policy of $2,500 to plaintiff as an employe of the Northern Pacific Railway Company. Plaintiff claims that he has become totally and permanently disabled before reaching the age of 60 years and hence the sum of $2,500 is due him under this provision of the policy:

"If any employee, before attaining the age of 60 years and while insured hereunder, becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wage or profit, or shall meet with the entire and irrecoverable loss of the sight of both eyes or of the use of both hands or both feet or of one hand and one foot, such employee shall be deemed to be totally and permanently disabled. Upon receipt at the Home Office of the Company, during the continuance of insurance on such employe, of satisfactory evidence of such disability, the company will waive further payment of premium for the insurance upon the life of such employe and in lieu of all other benefits provided for on such life under this policy will pay the amount of insurance in force upon such life at the time such disability commenced."

Plaintiff, now about 40 years of age, had been working as a wrecking engineer for the Northern Pacific Railway Company, when in October, 1929, a door of a gondola car weighing about 1,200 pounds fell on his back while in a prone position. Plaintiff was rendered unconscious. He was taken to an emergency hospital at Staples, where the accident occurred, and afterwards removed to the hospital of the railway company at St. Paul. One leg was paralyzed for a month and the other until in January, 1930. In March he went back to work and worked on and off until November 11, 1933, when he fell off the side ladder of a boxcar and injured his knee. This required treatment by the local doctor at Staples and also at the company's hospital at St. Paul for an operation on the knee. Plain-

tiff testified that he was unable to do the work of a railroad employe. It appears that before plaintiff was injured the second time he was interested with others in a petroleum products distributing business and an ordinary filling station at Staples. This he was compelled to take over, and employed one Garland to conduct it while plaintiff continued to work for the railway company. Later he leased a filling station at Browerville and equipped it and built and conducted one at Verndale.

The assignments of error challenge (a) an instruction given the jury; (b) the failure to charge the jury that if they found that plaintiff managed or carried on his oil business he was not totally and permanently disabled, within the meaning of the policy; and (c) the refusal to grant judgment notwithstanding the verdict.

The attacked instruction reads:

"The existence of total and permanent disability so as to prevent the plaintiff from engaging in any occupation and performing any work for compensation or profit must mean any occupation similar to that in which he was ordinarily engaged before the accident, or for which he may be capable of fitting himself within a reasonable time. * * * In determining whether the plaintiff is disabled within the meaning of the policy as I have given it to you, you should take into consideration the plaintiff's occupation at the time he was injured, his training in life, his schooling, his present physical condition, his age and all other facts presented by the evidence bearing upon what work he might fit himself for within a reasonable time."

It was perhaps not quite correct to stress the time of the accident, for the maturing of the policy did not depend upon a disabling accidental injury, but upon the event of total disability for work from whatever cause. But the instruction was in the main correct and not in conflict with these three cases relied on by defendant: Lobdill v. Laboring Men's Mut. Aid Assn. 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 A. S. R. 542; Carson v. New York L. Ins. Co. 162 Minn. 458, 203 N. W. 209; Wilson v. Metropolitan L. Ins. Co. 187 Minn. 462, 245 N. W. 826, 828. The instruction is virtually approved in both the Carson and Wilson cases. In the latter case

the policy as to disability was much the same as the instant case and was one of group insurance of railroad employes.

We find no requested instructions from defendant in the record; but at the close of the charge its counsel took the following exception "to the failure of the court to charge the jury that if the jury found that the plaintiff managed or carried on his oil business that in such case he would not be totally and premanently disabled within the meaning of the policies." The evidence would not justify an instruction in that form, for at all three filling stations there were attendants who operated the same either on salary or a commission basis. Plaintiff lived at Staples and spent some time at the filling station after ceasing to work for the railroad company; but the testimony is that only occasionally did he fill the tank of an automobile, or order some merchandise, or write a check to pay an account. One Garland had had continuous charge of the oil business for plaintiff at Staples from the time it came into being until the trial of this case.

Defendant insists that the evidence does not sustain the verdict; hence the court erred in not granting its motion for a directed verdict and in denying it judgment notwithstanding the verdict. The two medical experts who testified for plaintiff demonstrated from X-rays that he has permanent physical impairment of his body which in their opinion totally disables him to earn wages as a railroad employe or as a laborer in any other employment. It appears that the injury suffered when the 1,200-pound door fell on plaintiff was a fracture of the eleventh vertebra and the eleventh rib on the right side; that inflammation has set in, causing the "lipping" of the tenth, eleventh, and twelfth vertebrae; also that there is a separation of the sacroiliac joint on the right side of the pelvis and a deviation of the spine in two places. Defendant introduced no medical testimony to dispute either the findings or the conclusions of the doctors produced by plaintiff, one of whom had treated him for both of his accidental injuries above mentioned. Defendant's contention is that the evidence is conclusive that plaintiff is able to carry on an occupation for profit; that he has carried on this petroleum products distribution business at Staples, and filling

station there and at Browerville and Verndale; and that it appears that he negotiated for the purchase or leasing of the sites for the stations and did such work as on occasions fill the tank of a filling station customer, could walk short distances, had driven a car some 140 miles, had solicited business for his distribution plant at Wadena and other points, had gone on hunting and fishing trips, had attended dances, and at one time engaged in a personal altercation; and, further, that his distributing business of petroleum products at Staples had grown since his first accidental injury so that he paid upward of $12,000 a year in freight charges on shipments to him. Hence, it is urged, since this business has been carried on by him as well after the time he claims to have become disabled as before he suffered the injuries which he claims resulted in his present disability, he is not disabled from carrying on an occupation for profit. The evidence further shows that the filling stations of plaintiff at Browerville and Verndale are conducted by men employed on salary or commission. And so is plaintiff's business at Staples by one Garland, who has actively conducted it from the time it started until the present time, upon a salary basis. A person possessed of capital and some talent for business may engage in an occupation for profit though bound to his bed by disease or infirmity, by employing others to do the work. But we do not think the clause in the insurance policy here involved, "if any employee * * * becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wage or profit," should be construed to mean that the insured must prove not only that he is so disabled physically that he cannot earn wages in his usual occupation or any other for which he may fit himself within a reasonable time, but must also prove that the disability is such that he could not by the employment of others conduct a business for profit. An occupation here must have the same meaning as employment, that is, either working for wages when employed by another, or for the reward or profit obtained from one's own labor in an occupation or vocation. If the evidence had shown that plaintiff had the physical ability to do the work or a substantial part of the work in the business he had at Staples, it

would have defeated a recovery; but when the jury could find that he was disabled from doing or attending to any but a trifling part and had to employ others to perform substantially the whole thereof, we think a recovery was warranted. As stated in Wilson v. Metropolitan L. Ins. Co. [187 Minn. 465] in construing an insurance policy of this kind:

"The court may take into consideration the situation existing at the time the policy was issued, the capabilities and occupation of the insured, and the risk intended to be covered. * * * The insurance here in question was what is known as group insurance, taken out by a railway company by which plaintiff was employed, to protect its employes in the railway service."

There, as here, the insured could be considered as a common laborer with limited education. In Monahan v. Order of Columbian Knights, 88 Minn. 224, 230, 92 N. W. 972, 974, this meaning to be given to the words "engage in an occupation," as found in this policy, is approved:

"The words 'following any occupation' mean something more than the doing of one or more acts pertaining thereto. They involve the idea of continuity, and involve, also, the doing of all those things which are an essential part of the work or business in which a party is engaged."

The fact that plaintiff owned and carried on a business for profit apart from his employment as wrecking engineer for a railway company should not place him in a different position with respect to the terms of this insurance policy than the one he would have occupied if he had not owned such business, unless he was able to work in that business in the manner defined in Monahan v. Order of Columbian Knights, 88 Minn. 224, 92 N. W. 972. That the evidence is not at all parallel to that in Kerkela v. Benefit Assn. of Ry. Employees, 194 Minn. 318, 260 N. W. 300, is so obvious that comment is unnecessary. It is also of some significance that the policy provides that the loss of the use of both hands or both feet or one hand and one foot shall be deemed a total and permanent disability.

One so disabled could carry on business for profit in like manner that plaintiff does. The evidence sustains the verdict, and defendant is not entitled to judgment *non obstante*.

The order is affirmed.