Maxwell M. WRIGHT, Plaintiff,

v.

MINNESOTA MUTUAL LIFE INSURANCE COMPANY, a Minnesota corporation, Defendant.

No. 3–61–Civ.–32.

United States District Court
D. Minnesota.
Third Division.
July 31, 1961.

Walter W. Laidlaw and Richard J. O'Brien, Minneapolis, Minn., for plaintiff.

Frank Claybourne, St. Paul, Minn., for defendant.

DEVITT, Chief Judge.

Plaintiff, a 51-year-old commercial airline pilot, became physically disqualified as such because of hypertension and high blood pressure, and recovered a $20,000 jury verdict against the defendant insurance company which had insured him against permanent disability.

Defendant has moved for judgment N.O.V. or for a new trial.

Jurisdiction is based on diversity of citizenship and the requisite amount in controversy.

It is not disputed that the group insurance policy was issued, that plaintiff paid the required premiums and is insured under it, and that he can no longer serve as a commercial airline pilot.

The insurance policy contained this provision:

"If * * * any employee insured hereunder, * * * has become, and is, totally disabled by bodily injury or disease and presumably will be permanently prevented thereby for life from pursuing any occupation for remuneration or profit, the company will pay to said employee * * the full amount of insurance which was in force on such employee at the time such disability began."

The courts have recognized the insurance industries' practice of issuing two distinct kinds of disability policies. The nature of each and the distinctions between them are described in Weum v. Mutual Benefit Health & Accident Ass'n, 1952, 237 Minn. 89, 54 N.W.2d 20. We are here concerned with what is known as a "general disability" policy. This type insures against the disability of the insured to engage in any occupation similar to that in which he was engaged before the disability or to which he may be capable of adjusting or fitting himself within a reasonable time. The other type, known as an "occupational disability" policy, insures against disability to engage in the insured's specific, usual occupation such as that of mechanic, doctor or airline pilot. There is no claim here that the policy provision involved is an occupational disability provision.

It was the function of the jury in this case to decide whether plaintiff was totally disabled within the meaning of the general disability provision of the policy. In this connection, the jury was instructed as follows:

"The existence of total and permanent disability so as to prevent the plaintiff from pursuing any occupation for remuneration or profit means any occupation similar to or comparable to that in which he was ordinarily engaged before the accident or for which he may be capable of fitting himself within a reasonable time. * * * The occupation must be not that of a shoeshine boy or a similar menial job but one from which he can earn a reasonably substantial income rising to the dignity of a livelihood even though the income be not as much as he earned before the disability.

"In determining whether the plaintiff is disabled within the meaning of the policy, you should take into consideration his occupation at the time he was disabled, his training in life, his schooling, his present physical condition, his age and all other facts presented by the evidence bearing upon what work he might fit himself for within a reasonable time."

I am satisfied that this is an appropriate statement of the law with reference to a disability provision such as the one involved in this case. Weum v. Mutual Benefit Health & Accident Ass'n, supra; Carson v. New York Life Ins. Co., 1925, 162 Minn. 458, 203 N.W. 209; Lorentz

v. Aetna Life Ins. Co., 1926, 197 Minn. 205, 266 N.W. 699. Neither party seriously disputes this.

The Court is asked to grant defendant a judgment notwithstanding the verdict on the ground that the evidence measured against the law adopted by the Court precluded a determination that the plaintiff was permanently and totally disabled. The Court may grant such motion only where there is no substantial evidence to support recovery or where the evidence is so overwhelmingly against recovery as to leave no room for doubt as to what the facts actually are. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. See also Fed.Pract. & Procedure, Rules Ed., Barron & Holtzoff, Section 1302 and cases cited.

We trial judges were reminded of the basic principles governing the granting of a motion for judgment notwithstanding the verdict by the recent case of Hanson v. Ford Motor Co., 8 Cir., 1960, 278 F.2d 586, 596 where the Court said:

"* * * we find pertinent * * the established rule that in passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it."

While it is my view that this jury verdict was against the clear weight of the evidence, I cannot say that the evidence against recovery is clear or overwhelming, or that reasonable men could not differ as to the conclusions to be drawn from that evidence. The motion for judgment N.O.V. is denied.

The Court has no hesitation, however, in granting defendant a new trial. The evidence showed that plaintiff had some 30 years of experience in the field of aviation, that he had been a pilot since the early 1930's, had served as such with Northwest Airlines since 1938, and as a captain pilot since 1942. His experience equipped him with an extensive knowledge of the whole field of aviation. While he has high blood pressure and hypertension, his health in other respects is good, and the testimony showed that he could perform a number of different jobs in the airlines industry, such as flight dispatcher, aircraft routing controller, chief pilot or assistant manager of flying, and link trainer or flight simulator operator. He could also serve as a ground instructor. None of these positions would pay as much as the very substantial compensation he received as an airline pilot, but the evidence pointed to the conclusion that these occupations are comparable within the meaning of the policy provision.

It was shown by the evidence that no former pilots are now employed in any of the enumerated or other ground occupations for Northwest Airlines. It is urged, by an inference from this, that Northwest Airlines pursues a policy of not employing former pilots in administrative or ground capacities. This may or may not be true, but that is not to say that this plaintiff could not obtain employment with some other airline or in some other branch of the aviation industry. It is difficult for the Court to believe that this plaintiff, with his extensive experience, does not have the ability to perform some job or occupation comparable to the one which he previously held, or for which he could make himself qualified within a reasonable time. And the evidence was overwhelming in support of this conclusion.

It must be remembered that when the plaintiff contracted for this type of "general disability" coverage with its relatively low premium, 60¢ per month per $1,000 of insurance, he contracted not for absolute protection against disability to

perform the duties of an airlines pilot, but only against the disability to perform a similar occupation. Had he contracted for an occupational disability type of policy, he would have been required to pay a much higher premium. Unfortunate as may be the plaintiff's situation, with the denial of a renewal of his pilot's certificate, it does not appear to have been within the contemplation of the parties that the defendant would insure the plaintiff absolutely against the occupational risk which he has suffered.

The Court is of the view that the jury verdict is contrary to the clear weight of the evidence, and a new trial is necessary to prevent a miscarriage of justice. A new trial is granted.