**MINNESOTA MUTUAL LIFE INSUR-
ANCE COMPANY, a Minnesota
Corporation, Appellant.**

v.

**Maxwell M. WRIGHT, Appellee.**

**No. 17001.**

United States Court of Appeals
Eighth Circuit.

Feb. 4, 1963.

Frank Claybourne, St. Paul, Minn., for appellant.

Walter W. Laidlaw, Minneapolis, Minn., for appellee.

Before SANBORN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant Minnesota Mutual Life Insurance Company from final judgment based upon a jury verdict in favor of the plaintiff for $20,-

000, the full coverage of a general disability policy held by plaintiff, and from order denying defendant's motion for judgment n. o. v. and alternative motion for a new trial.

Plaintiff's cause of action is based upon a group insurance policy including disability coverage issued by defendant to the employees of Northwest Airlines, Inc. Plaintiff was a pilot on Northwest Airlines. His coverage by the policy is conceded. Jurisdiction by reason of diversity of citizenship and the requisite amount is established.

The principal issue raised by this appeal is whether there is substantial evidence to support the jury's finding that the plaintiff is disabled within the meaning of the policy. Appropriate motions for directed verdict were made at the close of plaintiff's evidence and again at the close of all of the evidence. After verdict, defendant again challenged the sufficiency of the evidence to support the verdict by motion for judgment n. o. v.

The disability provision, so far as material, reads:

"If * * * any employee insured hereunder, * * * has become, and is, totally disabled by bodily injury or disease and presumably will be permanently prevented thereby for life from pursuing any occupation for remuneration or profit, the company will pay * * * the full amount of insurance which was in force on such employee at the time such disability began."

It is conclusively established that plaintiff is unable to carry on his occupation as a pilot. As a result of the disclosure of hypertension and a cardiac enlargement in a routine physical examination required by the employer, which diagnosis was confirmed by a federal aviation agency doctor, plaintiff's license was revoked. This disqualified the plaintiff from serving as a co-pilot and terminated his employment.

The parties agree that the policy here involved is of the type known as a general disability policy and that it is not an occupational disability policy. The court so instructed the jury.

[1] The parties likewise agree that the legal standards for determining the right to recover under Minnesota law upon the general disability policy here involved are properly stated in the trial court's instructions, as follows:

"The question to be determined is whether plaintiff is physically able to engage in any occupation similar or comparable to that in which he was engaged before his disability, or one for which he may be capable of fitting himself within a reasonable time, and from which occupation plaintiff can earn a reasonably substantial income rising to the dignity of a livelihood in any such occupation even though the income be not as much as he earned before the disability."

See Weum v. Mutual Benefit Health & Accident Ass'n, 237 Minn. 89, 54 N.W.2d 20; Lorentz v. Aetna Life Ins. Co., 197 Minn. 205, 266 N.W. 699.

It is apparent that the foregoing standards were applied by the court in passing upon defendant's motion for judgment n. o. v.

In Hanson v. Ford Motor Co., 8 Cir., 278 F.2d 586, 596, we set forth the principles governing consideration of a motion for judgment n. o. v., as follows:

"[T]he established rule that in passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could dif-

fer as to the conclusions to be drawn from it."

When the foregoing tests are applied to the facts in this case, we are satisfied that the defendant has failed to demonstrate that the verdict lacked substantial evidentiary support.

Plaintiff is 53 years of age. He graduated from high school and had one year of general college work. He received his first pilot's license in 1929, and since then has devoted all of his time to flying airplanes. He has had no training or experience in any other field of work. Plaintiff did charter flying, gave some flight instructions in a one plane school, and was employed as a pilot by a number of companies prior to his employment as a co-pilot by Northwest Airlines in 1938. He became a captain pilot in 1943 and continued to serve Northwest Airlines in that capacity until he lost his license in 1960. He has flown all types of aircraft except jets. His salary at termination was about $23,000 per year.

Plaintiff testified that he attempted to secure other employment and he followed every lead he could. Among other things, he sought work with the United States Immigration Service believing he had some experience with passports in connection with his flights to foreign countries. He also applied for investigative work with Wilmark Company, for an office position with a builders association, and for a job in a clothing store. He states that he was unable to obtain any of such positions and that he was told either that he was too old to train or that he was not regarded as physically fit for the position.

Defendant produced Mr. Carlson, Director of employment for Northwest Airlines, as a witness and elicited testimony that with some moderate further training plaintiff could qualify by reason of his previous experience as a pilot for various positions with an airline, such as flight dispatcher, crew scheduling controller, assistant manager of flying, link trainer and flight simulator, a member of the flight operations staff or a ground instructor. Such positions paid from $400 to $800 per month.

While Mr. Carlson testified at one point that Mr. Wright was eligible for re-hire by Northwest Airlines and that he would be given favorable and preferential consideration for a position, he also testified that plaintiff's usefulness is much more limited than that of a younger person; that while many positions do not require a physical examination, a person known to have been in ill health would likely be required to take a physical examination; that many positions are filled by employees rising from the ranks; that in filling those jobs the supervisor he is going to work for would be consulted, and that union and seniority considerations would apply to some of the positions. Among other things, Mr. Carlson stated:

"Q. All right. So that there is certainly some area here, is there not, you must admit, in which there is doubt as to whether you would or would not hire him, isn't that true?

"A. Well, as I indicated, we would go through the procedures that I outlined.

"Q. You would consider it, but that doesn't mean you would hire him, correct?

"A. That's right."

With respect to plaintiff's physical ability to engage in a similar or comparable occupation, all medical testimony establishes hypertension requiring daily medication, and some heart difficulty. All doctors agree that plaintiff is unable to perform any work which requires substantial physical exertion or mental tension. Dr. Proffitt as a witness among other things stated:

"Q. And if you were sitting in judgment as a doctor on an individual of Mr. Wright's age, which is fifty-three, coming over your desk and you saw these things you found, would you recommend his employment for any kind of a job?

"A. No. ——."

\* \* \* \* \* \*

"A. I qualified it by saying that any company or any job which requires and had physical standards, that he would not meet the physical standards for employment if there were standards established."

\* \* \* \* \* \*

"Q. Within the qualifications that you have stated.

"A. Yes. I would put, however, one further qualification on it if he were my patient and that is that I would probably advise him, with his long background in aviation, to stay away from aviation if he couldn't fly."

When asked upon recross-examination for the reason for the qualification last above, Dr. Proffitt stated:

"A. Mainly because of the fact that I think there is a certain amount of tension created by a man who has flown a long time—and I happen to be one of those—has flown a long time and then when you decide not to fly any more, if you still hang around aviation, it creates quite a mental problem."

There is, of course, testimony in the record which would indicate that it might be possible for plaintiff to carry on some gainful employment comparable to his occupation as a pilot. We do not believe that any purpose would be served in discussing in further detail the conflicting testimony.

■ The credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn therefrom, are matters falling within the province of the jury.

This case has been previously tried to a jury which granted full recovery to the plaintiff. Judge Devitt, who presided at the first trial, denied defendant's motion for judgment n. o. v. but granted the defendant a new trial, D.C. 195 F.Supp. 524.[1]

■ Two juries have found plaintiff entitled to recover upon his cause of action. Judge Devitt, who presided at the first trial, and Judge Larson who presided at the second trial have each denied defendant's motion for judgment n. o. v. based on insufficiency of the evidence to support the verdict. We cannot say that reasonable men could not differ as to the inferences and conclusions to be drawn from the evidence. The court committed no error in overruling the motion for judgment n. o. v.

We now reach defendant's alternate contention that the court erred in denying its motion for new trial. It is asserted that the court committed error in denying such motion for the following reasons:

"A. The verdict is not supported by the evidence and is contrary to law.

"B. It was prejudicial and reversible error to admit plaintiff's Exhibit 3 in evidence."

■■ A motion for new trial upon the ground that the verdict is against the weight of the evidence is addressed to the sound discretion of the court. The trial court has the advantage of seeing and hearing the witnesses, thus enabling him to have the feel of the case. Ordinarily, no error can be predicated upon

1. Defendant urges that Judge Devitt's opinion awarding the new trial supports the present motion for judgment n. o. v. Plaintiff argues that the record in the present trial is more favorable to the plaintiff than at the first trial, particularly by reason of the addition of Dr. Proffitt's testimony. Defendant contends that the record at both trials is substantially the same. The record in the first trial is not before us and we find it unnecessary to compare the records of the two trials. It is apparent from Judge

Devitt's opinion that he was not impressed with plaintiff's case. Nevertheless, after setting forth the recognized standards to be applied to motions for judgment n. o. v., he states: "While it is my view that this jury verdict was against the clear weight of the evidence, I cannot say that the evidence against recovery is clear or overwhelming, or that reasonable men could not differ as to the conclusions to be drawn from that evidence. The motion for judgment N. O. V. is denied."

the denial of such a motion for new trial. Glawe v. Rulon, 8 Cir., 284 F.2d 495, 498; Greene v. Werven, 8 Cir., 275 F.2d 134, 141. No showing of any abuse of discretion on the part of the trial court in the denial of the motion has been here made.

Defendant additionally contends that the court committed prejudicial error in receiving in evidence Exhibit 3. This exhibit is a letter dated January 20, 1956, written by John W. Fischbach, General Counsel of the defendant, to Frank J. Scott, insurance manager of Northwest Airlines, in reply to an inquiry as to policy interpretation. The defendant objected to the admissibility of Exhibit 3 upon the ground that it was a mere opinion of a lawyer on the very question of interpretation upon which the court would have to pass.

We believe that there is some ambiguity in the policy with respect to the nature and extent of the disability coverage. See and compare Weum v. Mutual Benefit Health & Accident Ass'n, supra (p. 29 of 54 N.W.2d).

 Where an ambiguity exists, evidence is admissible as an aid to construction. The practical construction of a contract by a party may be considered in the interpretation of an ambiguous contract. 29 Am. Jur., Insurance, § 165; 13 Appleman Insurance Law and Practice § 7385, pp. 35–36; Eggleston v. Dudley, 3 Cir., 257 F.2d 398, 400; Hawkeye Casualty Co. v. Rose, 8 Cir., 181 F.2d 157, 159.

 Exhibit 3 was in reply to a direct inquiry addressed to defendant at its home office asking for an interpretation of the identical type of policy here involved. Exhibit 3 purported to answer the inquiry. It was signed by John W. Fischbach, General Counsel, who elsewhere in the record also signed communications as vice president. Other letters signed by Mr. Fischbach as general counsel which modified and expanded upon the interpretation of the policy contained in Exhibit 3 were also received in evidence. We hold that the court committed no error in receiving Exhibit 3 in evidence.

Defendant's contention that the court erred in its instructions is not asserted in a separate brief point in defendant's original brief but is stated briefly in the discussion of the erroneous reception of Exhibit 3. The portion of the instruction objected to and the exception made are not set out. Defendant developed this issue in oral argument. In a reply brief filed by leave of court subsequent to oral argument, the defendant states its position as follows:

"The instructions objected to appear on page 110 of the record as follows:

" 'These letters may or may not state an interpretation of the applicable policy provision and the law different than I have given you or more favorable to either one of the parties to this action. The weight of such interpretation by defendant is for your determination.'

"This instruction was appropriately objected to as shown on page 113 of the record as follows:

" 'Mr. Claybourne: I have only this objection. Your Honor, that the comment that the Court made with reference to the letters by Mr. Fischbach I think allows them to put their own interpretation on the letters and in turn construe the policy, which I think is a matter for the Court to instruct them on as a matter of law.' "

 Plaintiff in his brief also filed subsequent to oral argument discusses the instruction issue. Errors relied upon should be asserted in the opening brief and our Rule 11(b) should be followed. However, since the instruction issue has been fully discussed by both parties, we have chosen to give it full consideration.

 The writing and receipt of Exhibit 3 and the related supplemental letters are not in dispute. We believe that to the extent the letters bear upon the interpretation of the insurance contract, questions of law for the court are pre-

sented, and that no dispute existed requiring the determination of a jury with respect to Exhibit 3 and the related letters. Under the circumstances here presented, we believe that the court erred in giving the instruction hereinabove set out. The instructions as a whole reveal that the court's interpretation of the policy was not influenced or affected by Exhibit 3 or any of the other letters. The parties agree that the court properly interpreted the policy upon the basis of Minnesota law.

■ Defendant has made no serious attempt to demonstrate in either of its briefs that the error in the instructions complained of is prejudicial. Rule 61, Fed.R.Civ.P., like Rule 52(a), Fed.R. Crim.P., provides that errors which do not affect the substantial rights of the parties shall be disregarded. 28 U.S.C.A. § 2111 provides that upon appeal, harmless errors shall be disregarded. The harmless error rule applies to instructions. See Moore, Federal Procedure, para. 61.09.

In Homan v. United States, 8 Cir., 279 F.2d 767, 771, we stated the rule to be followed in determining whether an asserted error is prejudicial. We said:

> "The reviewing court must, of course, be able to say with fair assurance that the errors complained of could not, with natural operation in the total setting and proceedings had, be regarded as having possessed any influencing effect. Blackwell v. United States, 8 Cir., 244 F.2d 423, 431. 'If, [however], when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congess' (presumably as a question of substantive or procedural due process). Kotteakos v. United States, 328 U.S. 750,

764–765, 66 S.Ct. 1239, 1248, 90 L. Ed. 1557."

■ When such rule is applied to the facts in this case, we are not persuaded that the claimed error in the instructions is prejudicial. The court, in addition to admitting Exhibit 3, also admitted additional letters of defendant's general counsel interpreting the policy. The instruction complained of refers to all of these letters. Some of the letters are favorable to the defendant. The letters, when considered as a whole, do not point to any different interpretation of the policy than the interpretation made by the trial court.

The court in several places in its instructions clearly and properly stated the test to be applied in determining liability under the policy. Our examination of the record as a whole, including the instructions, satisfies us that the error in the instruction asserted in all probability had no affect upon the verdict of the jury. As previously stated, another jury in this same case has reached the same result. We believe that the defendant has had a fair trial and that no prejudicial errors were committed which affected the result.

The judgment appealed from is affirmed.

SANBORN, Circuit Judge (dissenting).

I am unable to convince myself (1) that, under the evidence and applicable Minnesota law, the plaintiff made a case for the jury; (2) that the letters of the General Counsel of the defendant expressing his opinion with respect to the interpretation of the disability provision of the policy were admissible in evidence or should have been submitted to the jury; and (3) that the instruction relative to the letters, which, in effect, left "[t]he weight of such interpretation by defendant" to the determination of the jury, was harmless.

I would reverse.