In re Gary BLACK, Loretta
Black, Debtors.

Bankruptcy No. 95–12245LK.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Oct. 30, 1996.

Charles R. Nettles, Austin, Texas, for
Debtors.

Bruce M. Wilpon, Special Assistant United
States Attorney, Austin, Texas, for IRS.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held a hearing on August 7,
1996, on the Debtors' Objection to Proof of
Claim of the Internal Revenue Service. The
Court has considered the arguments of coun-
sel for the parties, the testimony of the wit-
nesses, and post-trial briefs. This Memoran-
dum Opinion is issued as written findings of
fact and conclusions of law under Bankruptcy
Rules 7052 and 9014.

### Findings of Fact

The Debtor, Gary Black, was a commercial
airline pilot for Delta Airlines ("Delta") for
29 years. In 1993, at the age of 57, he
voluntarily took early retirement due to what
he testified to were certain health problems.
Upon retiring he received taxable pension
distributions from two retirement accounts
totaling $566,140.00. These distributions
were from his regular retirement pension
plan and were not distributions from a dis-
ability pension. As such, they were reported
as income on the Debtors' 1993 Form 1040.
The Debtors also reported and paid the addi-
tional 10% penalty attributable to the early
distributions from these accounts.

On June 26, 1996, the Debtor filed a 1993
Form 1040X seeking a refund of the 10% tax
penalty on the basis that he retired due to
disability and, therefore, is exempt from the
10% penalty as provided by 26 U.S.C.
§ 72(m)(7).

The Debtor testified to a long history of
respiratory problems dating back to child-
hood. His problems became more acute in
the mid 70's when he began to suffer from
chronic bronchitis exacerbated by allergies
and high blood pressure. The high blood

pressure was controlled with medication. The respiratory problems were treated intermittently on an "as needed" basis. However, they persisted, arguably in part due to the Debtor's failure to follow the repeated recommendations of his doctors, i.e. to quit smoking 1½ packs of cigarettes a day and to lose weight. On at least one occasion his respiratory problems resulted in the Debtor being grounded from flying. Even so, the Debtor piloted commercial aircraft during this entire period from 1976 until his retirement in 1993. For each of these years he routinely passed annual FAA medical evaluations, including the medical evaluation for 1993, the year of his retirement. Each time these evaluations found him medically fit to pilot commercial aircraft.

## Issue

1. Is the Debtor "disabled" within the meaning of 26 U.S.C. § 72(m)(7) so as to be excepted from the additional 10% tax on early distributions from qualified retirement plans for the 1993 tax year?

## Conclusions of Law

Section 72(m)(7) of the Internal Revenue Code provides,

> ". . . an individual shall be considered to be disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long, continued, and indefinite duration. An individual shall not be considered to be disabled unless he furnishes proof of the existence thereof in such form and manner as the secretary may require."

26 U.S.C. § 72(m)(7).

Under this statute the Debtor must show: (1) that he is unable to engage in *any substantial gainful activity;* (2) because of medically determinable *physical* or mental *impairment;* and, (3) such impairment will result in death or is of *long, continued,* and *indefinite duration.* Further, the individual must furnish proof that each of these elements exists.

There is a paucity of case law defining what is a disability under this provision.

In *Dwyer v. Commissioner,* 106 T.C. 337, 1996 WL 253328 (1996), the Tax Court held that the plaintiff, a stockbroker, was not "disabled" as that term is defined under 26 U.S.C. § 72(m)(7) and Treas.Reg. § 1.72–17(f) because he was not prevented by his illness from engaging in substantial gainful activity. The plaintiff had continued to trade stock in the year in question, despite his diagnosed clinical depression. The fact that he had a net loss in that activity was immaterial since he had intended to make a profit. The potential permanency of his depression was also irrelevant as his impairment did not prevent his substantial gainful activity of selling stocks part-time. Lastly, his periodic psychiatric examinations did not rise to the level of "constant supervision" as required under Treas.Reg. § 1.72–17A(f)(2)(vi).

In *Kane v. Commissioner,* 63 T.C.M. (CCH) 2753, 1992 WL 73089 (1992), the petitioner claimed he was disabled in 1986 when he received early distributions from his IRA. To support his contention, the petitioner offered two exhibits. The first was a state court order from 1991 removing custody of his minor child due to his diabetes and heart disease and his wife's personality disorder. The second was a computer print out stating that the petitioner was sufficiently disabled in May 1990 to begin receiving social security payments. Because neither of these exhibits showed that the Kane was disabled in 1986, the Court held that he had not met his burden of proof and was liable for the 10% additional tax on early withdrawals from IRA accounts.

In *Kovacevic v. Commissioner,* 64 T.C.M. (CCH) 1076 (1992), the Tax Court determined that the Kovacevic was liable for the 10% additional tax on premature distributions from his IRA because even though his depression reduced his ability to earn a living, it was not established that his condition was irremediable or that it required institutionalization or continued supervision. The fact that Kovacevic earned a salary and started a new engineering business in the pertinent year the Court found was "incon-

sistent with the exigencies of the statutory definition of disability". *Kovacevic* at 1078.

Here, the IRS contends that the Debtor was not "disabled" because his impairment was remediable and, thus, not of the requisite indefinite duration. Further, the IRS points out that the Debtor failed to obtain the requisite physician's certification that he was totally and permanently disabled.

The Debtor argues that he was "disabled" because his medical condition prevented him from engaging in either his customary or any other comparable substantial gainful activity. He has no other specialized skills outside of commercial aviation and has only a high school education. Thus, he argues that the uniqueness of his occupation, flying commercial aircraft, makes it impossible for him to find any "comparable substantial gainful activity" in which to be gainfully employed.

This issue was discussed in *Minnesota Mutual Life Insurance v. Wright*, 312 F.2d 655 (8th Cir.1963) which was a disability case, not a tax case. There the pilot was grounded for hypertension. The Court found that a disability existed due to the pilot's age, background and lack of comparable employment opportunities.

■ "Substantial gainful employment" and "comparable activity" are discussed in Treas. Reg. § 1.72–17A(f)(1) and (f)(2). Subsection (f)(1) states,

"[i]n determining whether an individual's impairment makes him unable to engage in any substantial gainful activity, primary consideration shall be given to the nature and severity of his impairment. Consideration shall also be given to other factors such as the individual's education, training, and work experience. *The substantial gainful activity to which Section 72(m)(7) refers is the activity, or comparable activity, in which the individual customarily engaged prior to the arising of the disability* or prior to retirement if the individual was retired at the time the disability arose." (Emphasis added).

Treas.Reg. § 1.72–17(A)(f)(1).

However, IRS Publication 524, which covers disability credits, says nothing about comparable activity. It defines "substantial gainful activity" as,

"... the performance of significant duties over a reasonable period of time while working for pay or profit, or in work generally done for pay or profit. Full-time work (or part time work done at your employer's convenience) in a competitive work situation for at least the minimum wage conclusively shows that you are able to engage in substantial gainful activity.

Substantial gainful activity is not work you do to take care of yourself or your home. It is not unpaid work on hobbies, institutional therapy or training, school attendance, clubs, social programs, and similar activities. However, doing this kind of work may show that you are able to engage in substantial gainful activity. The fact that you have not worked for some time is not, of itself, conclusive evidence that you cannot engage in substantial gainful activity."

IRS Publication 524, Credit for the Elderly and Disabled, p. 3 (1995).

IRS Publication 524 seems at odds with Treas.Reg. § 1.72(f)(1) which is clear. The primary consideration is the nature and severity of the impairment with regard to the substantial gainful activity in which the individual was customarily engaged prior to the disability. Other factors, such the individual's education, training, and work experience are to be considered secondarily.

Subsection (f)(2)(iii) of the Treasury Regulation provides examples of impairment sufficient to be considered de facto disability. It states,

"[w]hether or not the impairment in a particular case constitutes a disability is to be determined with reference to all the facts in the case. The following are examples of impairments which would ordinarily be considered as preventing substantial gainful activity: ...

(iii) [d]iseases of the heart, lungs or blood vessels which have resulted in major loss of heart or lung reserve as evidenced by X-ray, electrocardiogram, or other objective findings, so that despite medical treatment breathlessness, pain, or fatigue is produced on slight exertion,

such as walking several blocks, using public transportation, or doing small chores."

Treas.Reg. 1.72–17A(f)(2)(iii).

These examples are of extreme severity that would prevent one from doing *any* substantial gainful activity. The test, however, is whether an individual's medical condition prevents him from working in his prior employment or any other substantial activity comparable thereto. Whether or not he can walk around the block without becoming totally breathless may be irrelevant to the issue. For example, a professional marathon runner who contracts asthma may be able to walk several blocks, but may be incapacitated when it comes to running competitive marathon races. Likewise, an airline pilot may also be capable of walking several blocks without becoming breathless but be unable to pilot a commercial aircraft due to safety concerns arising from his medical condition. In both cases, there is little comparable activity to which one can turn as an equivalent career. So here it is appropriate to analyze the Debtor's alleged physical impairment against the specific backdrop of what he did prior thereto and to determine what it is this Debtor actually proved concerning his condition when he retired in 1993.

The burden is on the Debtor to establish that he had a medical condition which was sufficiently severe to preclude him from gainful employment as an airline pilot, there being no *comparable* substantial activity available to the Debtor.

Here, the Debtor grounded himself. He contends that when he became aware that he was medically impaired he had a duty to do so under Federal law. Further, he argues that regulations promoting the public health,

safety and welfare should take priority over those involving tax collection.

■ The Court is not convinced that the Debtor has met his burden. Under 26 U.S.C. § 72(m)(7) the taxpayer is required to substantiate his condition by attaching to his tax return a physician's statement substantiating his physical condition. The Debtor failed to do this when he filed his Form 1040X. The Debtor did produce a "To Whom It May Concern" letter dated June 28, 1996, the day after the Amended Return was filed. However, it does not contain the necessary elements to constitute a certification.[1] The letter contains several statements regarding events of which the physician obviously has no personal knowledge. It fails to address how long the Debtor's condition was expected to last in 1993. There is no *medical opinion* expressed that the Debtor was totally and permanently disabled in 1993. And, it was written three years after the time period in question. It is at most an attempt to shut the corral gate after the horses were already out.

No medical records or test results were produced by the Debtor demonstrating the severity of his condition in 1993 or its likelihood to continue in that state indefinitely. The Debtor had passed his annual 1993 FAA medical certification (demonstrating that his fitness to fly commercial aircraft) immediately prior to his decision to retire. In fact, the testimony reveals that the Debtor's decision to retire was made in direct response to his employer's dissatisfaction with the amount of time he was absent from work. The Debtor attributes this dissatisfaction to his illnesses; but there were no corroborating medical records offered into evidence to substantiate the Debtor's testimony concerning the extent of the physical problems he was experiencing at

---

**1.** The letter from R. Scott Ream, M.D., F.A.C.P., in chief stated,

"To Whom It May Concern:

This letter is in reference to Gary B. Black who is a patient of mine. Mr. Black was a pilot for Delta Airlines but because of several health problems had to take disability. This included recurrent hemoptysis secondary to COPD that was aggravated by the dry air of his cabin of his airliner, persistent hypertension, and severe cluster and migraine headaches.

Specifically, the hemorrhaging from his lungs that was related to his chronic bronchitis caused so much problems that he several times had to relinquish control of the airliner and was flying foreign routes which made medical care even more problematic.

He took a disability retirement during the last three months of this employment....".

that time or the extent to which he was then under medical supervision.

This is not to say that the Debtor did not have a medical condition for which he was being treated. He apparently did. However, his hypertension had been successfully regulated by medication for some time and continued to be so. His respiratory problems, although persistent, appear to have been remedial at that time. After all, he had just passed his annual FAA examination.

The Debtor had continually failed to heed the advice of his physician to quit smoking and lose weight, factors which aggravated his condition. And, the medical treatment for his respiratory symptoms was merely episodic. He was clearly not under "constant supervision" as required under Treas.Reg. § 1.72–17(A)(f)(2)(vi).

For all the reasons stated above, the Debtor should not be excepted from the 10% additional tax on early distributions from qualified retirement plans for the 1993 tax year as he was not disabled within the meaning of 26 U.S.C. § 72(m)(7).